## GARLICK against JAMES.

Where the promissory note of a third person is deposited by a debtor with his creditor, as collateral security for a debt, such note is a pledge, in which the pawnee has merely a special property, the general ownership remaining in the pawnor.

The pawnee's authority extends no further than to receive the amount of the note from the maker, and not to compromise with him for a less sum than appears on the face of the note, or to dispose of it in any other manner, until after the pawnor's default in redeeming.

Where the pledge is for an indefinite period, the pawnor should be called on to redeem, before the pawnee can dispose of the property; and if he is absent, or cannot be found, judicial proceedings should be had, to bar his right of redemption.

THIS was an action on the case. The declaration contained six counts. The third count, on which the plaintiff chiefly relied, stated, in substance, that the plaintiff, *Samuel Garlick*, and one *Murphy*, on the 29th of *January*, 1803, being indebted to *James* (the defendant) and *M'Cabe*, in the sum of 300 dollars, the plaintiff pledged, pawned, and delivered to the defendant, a note of *Seth Garlick*, for the sum of 600 dollars, belonging to the plaintiff, to secure the debt due to *James & M'Cabe*; that the defendant, afterwards, in 1810, gave up the said note belonging to the plaintiff, to *Seth Garlick*, the maker, for 300 dollars, when, in fact, *Garlick* was able to pay the whole amount of the note. The defendant pleaded the general issue, and the statute of limitations.

The cause was tried at the *Chenango* circuit, in *June*, 1814, before Mr. Justice *Spencer*.

It appeared, from a written memorandum, proved to be in the hand-writing of the defendant, that the note of *Seth Garlick* was left with *James & M'Cabe*, for a debt due them by *Murphy & Garlick* (the plaintiff).

*Seth Garlick*, who was a witness for the plaintiff, produced the note for 600 dollars, dated the 1st *November*, 1802, payable to the plaintiff on the 1st *November*, 1807; and he testified that it belonged solely to the plaintiff. That the witness, in 1810, agreed with the defendant to give him a note signed by *James Birdsall*, as security for the 300 dollars, and take up his own note and the note against *Murphy & Garlick*, which was, accord-

ingly, done, and the defendant gave up to the witness his note for the 600 dollars. The note of *Birdsall* had since been paid to the defendant. The witness further testified, that, at the time he took up the note of 600 dollars, he was, and still is, abundantly able to pay the whole amount; and that he knew, at the time he made this arrangement, of the terms on which the note had been left with *James & M‘Cabe.*

There was evidence of many other facts stated in the case, relative to points not urged on the argument, nor decided by the court.

. It was admitted on the part of the plaintiff, that the defendant acted in good faith, in the arrangement he made with *Seth Garlick*, and obtained as much for the note as the defendant believed he could get, under existing circumstances.

A verdict was taken for the plaintiff, by consent, subject to the opinion of the court on a case made.

*H. Bleecker*, for the plaintiff. The note of *Seth Garlick* was left with the defendant as a pledge, and he had no right to dispose of it. A pledge is a deposite of goods to be redeemed on certain terms.* It is not like a mortgage, which is to become an absolute interest, if not redeemed in a certain time.† The case of *M‘Clean* v. *Walker*‡ is in point. The note was held to be a deposite or pledge, and that the property in it did not pass by the delivery, as in case of a mortgage; and the distinction laid down in *Cortelyou* v. *Lansing*,§ by *Kent*, J., between a pledge or pawn and a mortgage, and as to the pawnor's right of redemption, are fully recognised. That case, too, was of a note delivered as security for a debt, and the learned judge, whose opinion is reported, lays it down as clear law, that where there is no specified time of redemption, the pawnee has no right to sell the pledge. The only power he has, is to receive the whole money from the maker of the note. If the pawnee sell the goods, *trover* lies.‖ The defendant was not obliged to take any measures to collect the note. Where notes are deposited as collateral security merely, the law imposes no obligation on the holder to collect the money. An executor, though standing in a more intimate relation to his testator, has no power to release or compound a debt, for a less sum.** Neither can an assignee of a bankrupt or insolvent, without the consent of the creditors. Nor can an attorney

*Margin notes:*

ALBANY, Jan 1815.

GARLICK v. JAMES

* 5 *Johns. Rep.* 258—261.
† 8 *Johns. Rep.* 96—98.
‡ 10 *Johns. Rep.* 471.

§ 2 *Caines' Cas. in Error,* 200, per *Kent*, J.

‖ 1 *Com. Dig. Action on the case, for Trover,* (D.) 2 *Salk.* 441. *Cro. Jac.* 245.

** 1 *Com. Dig. Adm.* (I.) *Assets,* (G.)

compound or release a debt for a less sum, without an authority, express or implied, from his client.

This is the case of a simple pledge or pawn, and the pawnee had no right to sell or dispose of the note, if at all, for less than the whole sum due on it; and the defendant is answerable for the difference.

*Henry,* contra. Where a pledge is of a dead chattel, it must be returned in specie. Where it is of a thing, in itself, of no value, but a mere evidence of debt, there the debt or money is to be returned; otherwise, the pawnee of a note could not receive the money of the maker.

There is a distinction between a strict pledge and a mortgage, or an assignment of a debt. In the latter case, if the money is not paid at the day, the mortgagee may sell the pledge. The note was left with the defendant as collateral security. It was, therefore, mortgaged or assigned. If so, the defendant had a right to receive the money due to him, and to give up the note.

The first, second, fifth, and sixth counts in the declaration, proceed on the ground of a property in the note, and that the defendant was bound to return it in specie. Those counts, clearly, cannot be maintained. The other two counts are founded on the misconduct of the defendant as a bailee or pawnee. They state the note to be due and unpaid when it was delivered, in 1803; but it appears from the note produced, that it was not payable until the 1st of *November,* 1807. There is, so far, a variance between the allegation in those counts and the proof.

The defendant having acted with good faith, ought not to be made liable; nor should the court, under the circumstances of the case, be inclined to favour the plaintiff.

In *Salk,*\* it is laid down, that where goods are pawned, redeemable at a certain day, the pawnee, in case of failure of payment at the day, may sell them. And in *Tucker* v. *Wilson,*† where exchequer annuities were pledged for a debt, it was held that they might be sold, after notice, without any decree of foreclosure of redemption.

An assignment of a *chose in action* need not be by deed.‡ If there was a parol assignment or mortgage of the note in this case, the property passed, and no action lies on the counts

\* 3 *Salk.* 267.
†. 2.

† 1 *P. Wms.*
261.

‡ *Howell* v.
*M'Ivers,* 4
*Term Rep.* 690.

founded on the property of the plaintiff in the note. ' And if
any action would lie against the defendant as an agent, there
are no counts in the declaration on that ground.    An assignee
of a bond or note has complete power over it, and may cancel
it, or deliver it to the maker.

    In *Cortelyou* v. *Lansing*, the thing pledged was a certificate
of *public stock*, for which no action could be maintained.

    *Bleecker*, in reply, said, that the case was made subject to
the opinion of the court.   No objection was made to the evi-
dence, nor was any variance insisted on, at the trial.

    It is said this is a mortgage.   But in case of a mortgage, the
property is transferred, subject to the right of redemption,
which is not the case here.

    If a pawnee wishes to sell the thing pledged, he must call on
the pawnor to redeem, in a reasonable time; and if he does
not, then he may sell; or, perhaps, if there was a time speci-
fied, within which the pawnor was to redeem, and he did not,
the pawnee might sell.

    THOMPSON, Ch. J. delivered the opinion of the court.   The
plaintiff and one *Murphy*, being indebted to *James & M'Cabe*,
on a balance of account for merchandise, the plaintiff left with
the defendant, as *collateral security*, a note drawn by *Seth
Garlick* to him, for 600 dollars, dated the 1st of *November*,
1802.   Some time in the year 1810, the defendant gave up the
note to *Seth Garlick* for 300 dollars; and this suit is brought to
recover the difference between the amount of the note, and
balance of accounts due to *James & M'Cabe*.

    That the note thus deposited with the defendant is to be con-
sidered and treated as a pledge, cannot admit of a doubt.   It
was delivered, with a right to detain it as collateral security, for
the balance due *James & M'Cabe*.   But the legal property did
not pass.   The general ownership remained with the plaintiff,
and the defendant only acquired a special property therein;
and if so, he has clearly exceeded his authority, in disposing
of it as he has done.

    In the very able and learned examination of the rights and
duties of a pawnee, in the case of *Cortelyou* v. *Lansing*,
(2 *Caines' Cases in Error*, 201.) most of the law on the subject
of pledges has been collected.   And I believe it may be safely

affirmed, that no case is to be found, where the deposite was for an indefinite time, as it was in the case before us, that the sale or disposition of the pledge by the pawnee, without first calling upon the pawnor to redeem, has been held good. It may be said here, as was said in that case, that it is unnecessary to decide in what manner this call is to be made, or how the pledge is to be disposed of in case of the pawnor's default to redeem; for in this case the pawnor was not called upon, in any manner whatever, to redeem. It was urged, on the argument, that this could not be done, because the plaintiff had absconded. If notice to redeem could not have been given personally to the plaintiff, the disposition of the pledge should have been authorized and sanctioned by judicial proceedings.

The authority of the defendant, with respect to the note, could extend no further than to receiving the money due upon it, without first calling upon the plaintiff, in some way, to redeem. The money, when received, would be a substitute for the note, and to be held upon the same terms, and subject to the same rights and duties as the note. And if the defendant undertook to compromise with the drawer of the note, and received a less sum than was due, he did it at his peril, as he acted without authority.

Although it is admitted, in the case, that the defendant acted in good faith, it is difficult to discover the reason of his making the sacrifice he did, in accepting of less than one half the sum due upon the note; for it is in proof, that the settlement was made with *Seth Garlick*, personally, and that he was, at the time, abundantly able to pay the full amount of the note. It was urged, on the part of the defendant, that the plaintiff might still call upon *Seth Garlick* for the balance due upon the note, as the payment made by him being for a less sum than was due, it would not operate as a discharge of the note. Admitting this to be correct, it will not exonerate the defendant, if he has so disposed of the pledge as to make himself responsible. A party may have two remedies for an injury, and may elect which to pursue.

In whatever light, therefore, the case is viewed, the plaintiff is entitled to recover, and must have judgment for 525 dollars, being the difference between the amount of the note and

the balance of account due from *Murphy & Garlick* to *James & M'Cabe*, according to the stipulation of the parties. Several other questions would appear to arise out of the case as presented to the court, but they were abandoned on the argument.

Judgment for the plaintiff.