## L. KIMBALL *vs.* S. MARSHALL and J. STOWELL.

A conveyed certain goods to B, in mortgage, to indemnify B for signing a note to C as A's surety; and B assigned the mortgage to C. A then conveyed the same goods in mortgage to D. C, having obtained a judgment on his note against A and B, caused the goods so mortgaged to be sold by virtue of the execution. It was *held* that C, by causing the goods to be thus sold must be considered as having abandoned the mortgage given to B; that D might maintain trespass against C and the officer who sold the goods, and that the true measure of the damages was the value of D's right to redeem the goods.

TRESPASS for taking and carrying away certain goods of the plaintiff.

The cause was tried upon the general issue at October term, 1835, when it appeared in evidence that Amos Kimball, on 16th September, 1833, being indebted to J. Stowell in the sum of $106 50, gave to Stowell a note for that amount, payable to Stowell or order on demand, which note Iddo Kimball signed as a surety. At the same time, Amos

Kimball conveyed to the said Iddo in mortgage certain goods, with a condition that Amos should pay the said note and save the said Iddo harmless; and Iddo assigned the mortgage to Stowell.

On the 11th November, 1833, Amos Kimball conveyed the same goods, and also certain other goods, to Lorenzo Kimball, the plaintiff in this case, in mortgage, to secure the payment of $230.

On the 29th November, 1833, Stowell brought an action against Amos and Iddo, on their said note, and attached a certain part of the goods mentioned in the said mortgages; and having obtained an execution against them in that action, he, on the 7th February, 1834, caused the said goods attached as aforesaid to be sold by virtue of the said execution. And this action is against Marshall, the officer who sold the goods, and Stowell, the execution creditor.

The value of all the goods taken and sold by the defendants was found to be $126 51.

The value of the goods taken which were included in the mortgage to the plaintiff, and not included in the mortgage given to Iddo Kimball, was found to be $44 86.

A verdict was taken, by consent, for the plaintiff for $126 51, subject to the opinion of the court upon the above case.

*Gregg* and *James Bell*, for the plaintiff.

*Porter* and *Bartlett*, for the defendants.

RICHARDSON, C. J., delivered the opinion of the court.

We shall, in the first place, consider whether Stowell, by causing the goods to be seized and sold by virtue of his execution, must not be considered as having renounced the mortgage assigned to him by Iddo Kimball, so that he cannot now avail himself of it at all as an answer to this action?

There is very little in the books on the subject of mort-

gages of personal property; and what there is, is so intermixed with the law of property pledged, that it is necessary to see in what circumstances mortgages and pledges agree, and in what they differ.

When property is pledged, the title of the pledger does not pass. The pledgee acquires only a special property,— a right to the possession until the purpose of the pledge is answered. And possession is essential to the validity of a pledge. *Story on Bailment* 196.

In these particulars a mortgage of chattels differs. The mortgage passes the title unconditionally, and possession is not essential to its validity. *Story on Bailment* 196.

When property is pledged, if the pledge be for an indefinite period, the pawnee has a right upon request to a prompt fulfilment of the engagement; and if the pawner neglects or refuses to comply, the pawnee may, upon demand and notice, require the pawn to be sold. *Story's Bailment* 207. He may file a bill in equity against the pawner for a foreclosure and sale, or he may proceed to sell, *ex mero motu*, upon giving due notice to the pledger. *Story on Bailment* 208; 2 *John. C. R.* 100; 2 *Kent's Com.* 582; 1 *Holt's N. P. C.* 383, *Pothonier* vs. *Dawson*.

And the law is the same, when goods are mortgaged, if no time of redemption is fixed by the agreement of parties. 1 *P. Williams* 261, *Tucker* vs. *Wilson*; 8 *John.* 96, *Brown* vs. *Bement*; 5 *do.* 260.

In the case now under consideration there was no time fixed within which the debt due to Stowell was to be paid by the mortgager, and Iddo Kimball to be indemnified. And it does not appear that any thing had occurred to vest the property absolutely in the mortgagee.

If Stowell intended to avail himself of the mortgage at all, he should have taken the proper course to entitle him to sell the goods, by giving notice to the mortgager, and requesting him to redeem by paying the note. If the mortgager had not, upon such notice, paid the note in a reasonable

time, it seems that the goods might have been sold, and the proceeds applied in satisfaction of the note.

But Stowell, by causing the goods to be sold by virtue of his execution, must now be considered as having waived all claims under the mortgage. It would be grossly unjust to let him set up the mortgage, after he has voluntarily caused the goods to be sold, and put it out of his power to restore them upon performance of the condition of the mortgage by this plaintiff. The wrong to the plaintiff is the same that it would have been had Stowell taken the goods without an execution, and sold them, giving the plaintiff no opportunity to redeem.

We are, therefore, of opinion that the mortgage to Iddo Kimball is no answer to this action.

The next question is, What amount of damages is the plaintiff entitled to recover? Is he to recover the value of the goods, or the value of his right to redeem the goods?

The case of *Cortelyou* vs. *Lansing*, 2 *Caine's Cases in Error* 200, was thus: One Antill deposited with Cortelyou a depreciation note, as a pledge to secure the payment of six hundred dollars and interest, loaned in 1783, by Cortelyou to Antill. On the 1st January, 1785, Cortelyou received of Antill $125, and on the 9th October, 1788, he sold the depreciation note for $625, which was $39 62 less than what was due to him from Antill. Lansing was administrator of the estate of Antill, and brought assumpsit to recover the amount received by Cortelyou for the depreciation note. Kent, J., was of opinion that Cortelyou had no right to dispose of the pledge in the manner he had done, and that the plaintiff was entitled to recover the value of the note. That, however, was only the opinion of a single judge, drawn up but never delivered; for the cause was never decided. 5 *Johns. R.* 260. And even admitting that the rule laid down in that opinion was correct when applied to an action of assumpsit, as that was, it by no means follows that in this action of trespass the plaintiff is entitled to damages beyond the value of his right to redeem.

*Garlick* vs. *James*, 12 *John.* 146, was an action on the case. The facts were these: The defendant received a note from the plaintiff against a third person, for $600, as a pledge to secure the payment of $300. And although the whole amount of the note thus received might have been collected, the defendant gave it up to the maker for $300, without consulting the plaintiff. It was held that the plaintiff was entitled to recover the amount of the note, after deducting the debt for which it had been pledged.

In an action of trover for a note, it appeared that the plaintiff had lodged the note with the defendant as a pledge to secure the payment of $200. On a tender of the $200 by the plaintiff, the defendant refused to give up the note. It was held that the plaintiff was entitled to recover the amount of the note, after deducting the $200. 10 *Johns.* 471, *McLean* vs. *Walker.*

In the case now before us, the plaintiff has never had possession of the goods, and can be held to account with the mortgager only for the amount he may recover in this case. The only loss he has sustained through the injurious acts of the defendants, is the loss of the privilege of redeeming the goods. And we are of opinion that the value of that privilege is the measure of the damages to which the plaintiff is entitled.