LELAND FAIRBANKS, Jr., Appellant, v. WINTHROP SARGENT, as Executor, etc., Respondent.

U. being the owner of a claim, resting in open account, against Z., entered into a contract with plaintiff, an attorney, by which, among other things, plaintiff agreed to prosecute and, as far as he was able, to collect the claim and to extinguish an indebtedness due him for prior services; for his services rendered and to be rendered, in case suit was brought upon the claim, the contract stated he "is to have  *  *  *  one-third of whatever amount of money, securities or property shall be collected, or in any way realized or received" thereon. U. retained the right to determine as to whether suit should be brought, and if brought out of the state to name the attorney; also to decide upon the terms and mode of settlement. *Held*, that the contract was, in effect, an equitable assignment, and by it plaintiff became equitable assignee of so much of the debt as was represented by his share of the proceeds.

Plaintiff, under the direction of U., caused suit to be brought upon the claim in New Jersey by an attorney selected by the latter, who, while suit was pending, without plaintiff's knowledge or assent, transferred the claim to S., defendant's testator, as collateral security for an antecedent debt due him, which transfer, it was conceded, was in the nature of a pledge. *Held*, that S. thereby acquired the right of a pledgee to the extent only of U's title, and obtained no rights by force of the assignment to the interest then owned by plaintiff.

Subsequently an arrangement for a settlement was made between U., S. and Z. to the effect that S. should surrender his assignment to enable U. to effectually release Z.; that the latter should pay U. $20,000 in certain

bonds in full of his debt, and be wholly discharged, the bonds to be delivered to S. in satisfaction of his claim against U.; such surrender to be on condition of the receipt by S. of the bonds. The agreement was carried out and S. received the bonds without knowledge of plaintiff's interest. In an action to recover one-third of the bonds, *held*, that the moment the bonds came to the legal ownership of U. and in his possession, the equity of plaintiff became a legal title to one-third ; the possession of U. became his possession; that, therefore, S. took the bonds subject to plaintiff's interest; and that the action was maintainable.

Also, *held*, that on the merits the equities of S. were in no way superior to those of plaintiff.

Reported on former appeal, 104 N. Y. 108.

(Argued October 23, 1889; decided November 26, 1889.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made January 28, 1889, which reversed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was brought originally against H. W. Sargent, the present defendant's testator, to recover one-third the value of certain bonds of the par value of $20,000 to which plaintiff claimed title under an agreement made between him and one Henry A. Underwood, sole surviving partner of the firm of J. A. Underwood & Son, which agreement, omitting names of debtors given therein, is as follows :

"Agreement made this 1st day of July, 1869, between Henry A. Underwood of the first part, and Leland Fairbanks, Jr., of the second part, witnesseth, that said Fairbanks, for his services in endeavoring to collect the claims belonging to the late firm of J. A. Underwood & Son against the following persons, viz. : * * * John J. Zabriskie, * * * (and any other claims than those particularly mentioned herein, which said Underwood shall hereafter place in his hands for collection), is to have one-sixth of whatever amount of money, securities or property shall be received on account of such of said claims as shall be settled without suit, and one-third of whatever amount of money, securities or property shall be collected, or in any way be realized or received (whether on

settlement or without settlement) on account of such of said claims as shall be put in suit, either in this or any other state or county.

" Said Underwood is to determine in all cases whether suit shall be brought or not, and, as to suits brought outside of this state, he is to determine who shall be the attorney to bring the same; and he is to decide upon the terms and mode of settlement as to each and every of said claims, whether such settlement be before or after suit is brought.

"And, as additional compensation for his said services, said Fairbanks is to be paid in cash by said Underwood at the rate of $3,600 a year, in equal monthly payments of $300 on the first of each month from and after the date hereof, and is to be released from whatever indebtedness he is now owing either to said late firm of J. A. Underwood & Son or to said Henry A. Underwood, and from whatever indebtedness he shall hereafter be under to said firm or to said Henry A. by reason of operations in stocks or gold.

"And it is understood that the compensation herein provided for the services of said Fairbanks shall also be in full satisfaction and payment of whatever services he has rendered for said late firm of J. A. Underwood & Son, or for said Henry A. Underwood, whether as executor or individually, prior to the date hereof, and shall also be in full satisfaction and payment of whatever services he may hereafter render for said Underwood, either in his capacity as executor or as an individual, during such period of time as said Fairbanks shall hereafter be receiving the money compensation for as above provided.

" Witness our hands the day and year first above written.

"HENRY A. UNDERWOOD,
"LELAND FAIRBANKS, JR."

The court found, among other things, the following facts:

Immediately upon entering into said agreement, the plaintiff undertook and endeavored to collect without suit the claim mentioned in said agreement against John Z. Zabriskie, but

without success.  Said claims grew out of dealings between
J. A. Underwood & Son, as stock brokers, with the said
Zabriskie, as a customer of said firm, and amounted, as claimed
by Underwood, to $100,000 and upwards.  Zabriskie resided
in the state of New Jersey.  Underwood, exercising the option
reserved to him in said agreement, determined that an action
to recover said claim should be brought on his behalf, as such
survivor, against Zabriskie, in New Jersey, by attorneys
residing and doing business in said state, named by him ; and
thereupon the plaintiff conferred with said attorneys, and
such an action was brought ; Zabriskie appeared by attorney
and defended the same, on the ground that nothing was
due Underwood.  Many hearings were had before the
referee upon the trial of said action, and plaintiff took an
active part in assisting said attorneys in the preparation for
trial and in the trial.  In October, 1871, and while the said
action was still pending, Underwood, without the knowledge
or consent of the plaintiff, by an assignment in writing,
expressing on its face that it was as collateral security, assigned
the said claim against Zabriskie to said Henry W. Sargent, the
defendant's testator, as collateral security for a pre-existing
debt due from the said Underwood, as such survivor, to
said Sargent.  As further collateral security for said debt,
Underwood assigned to Sargent an interest which he had in a
certain contract.  In June, 1872, while said action was still
pending, and while Sargent still held the said assignment,
Underwood, at the request of Sargent, and without the knowl-
edge or. consent of the plaintiff, consented that the claim
against Zabriskie should be settled and compromised by the
payment by him of $20,000 in full of said claim, and that the
money so paid should be received and applied in extinguish-
ment of his claim against Underwood.  Instead of money,
certain bonds of the par value of $20,000 were substituted.
The facts as to the negotiations and final arrangement between
Underwood, Sargent and Zabriskie are substantially set forth
in the opinion.

Upon receipt of the said bonds Sargent surrendered to

Underwood the assignment of the Zabriskie claim and of the contract, and gave to Underwood a general release from all claims and demands. Sargent received the bonds in good faith, without any knowledge or information of the agreement between the plaintiff and Underwood, or of plaintiff's claim thereunder.

*A. C. Brown* for appellant. The evidence on both trials proved that the assignment was as collateral. (*Odell* v. *Montrose*, 68 N. Y. 499, 503; *Campbell* v. *Parker*, 9 Bosw. 322, 326; *Wilson* v. *Little*, 2 N. Y. 443, 448.) There remained to Underwood the claim, subject to the interest of the plaintiff, and the exclusive right of deciding the terms and mode of settlement of the claim, and in the exercise of this reserved right he had begun and was prosecuting an action. (*Ely* v. *McKnight*, 30 How. Pr. 97; *Commercial Bank of Rochester* v. *Colt*, 15 Barb. 506; *Blydenburgh* v. *Thayer*, 3 Keyes, 295; *Weaver* v. *Borden*, 49 N. Y. 286; *Mechanics' Bk.* v. *N. Y. & N. H. R. R. Co.*, 13 id. 629; *Callanan* v. *Edwards*, 32 id. 486; *Anderson* v. *Nichols*, 28 id. 603; *Ballard* v. *Burgett*, 40 id. 314; Lewin on Trusts [5th Eng. ed.] 619; *Mangles* v. *Dixon*, 3 H. L. Cas. 702, 731.) The assignee took a purely equitable title, and the purchaser of an equitable interest has no protection, whether it relate to real or personal estate. (*Ford* v. *White*, 16 Beav. 120; *Phillips* v. *Phillips*, 4 De G., F. & J. 208.) The bonds in his hands were, therefore, merely the substitute for the claim. (*Farwell* v. *I., etc., Nat. Bk.*, 90 N. Y. 483, 489.) Had the subject of the assignment been negotiable paper, or a non-negotiable chose in action capable of manual delivery, Sargent would have been entitled to possession, for in such cases possession by the assignee is essential to the validity of the pledge. (Jones on Pledges, §§ 80, 139; Colebrooke on Col. Secur. § 9.) The right of action to recover money attends upon the right to demand and receive it, and cannot be severed from it. (*Nelson* v. *Eaton*, 26 N. Y. 410, 413; *Wheeler* v. *Newbould*, 16 id. 392, 397; *Wilson* v. *Little*, 2 id. 443, 447; *Grant* v.

*Tallman,* 20 id. 191, 197.)   The bonds were individual bonds and not negotiable.   (1 Burrill's Law Dict., Bills, Single and Penal; 2 id. 470; Bouvier's Law Dict., Bills, Obligatory; *F. and M. Bk.* v. *Grenier,* 2 S. & R. 115; *Arnold* v. *R. R. V. U. R. R. Co.,* 5 Duer, 207; *Hodges* v. *Schuler,* 22 N. Y. 114; 1 Parsons on Contracts, 26; Chit. on Bills, 166; *Clark* v. *F. W. Mfg. Co.,* 15 Wend. 256; *Warren* v. *Lynch,* 5 Johns. 239; *Hélfer* v. *Alden,* 3 Min. 332; *Covell* v. *T. Bk.,* 1 Paige, 131; *Foster* v. *Floyd,* 4 McCord, 159; *Conine* v. *Junction,* 3 Houst. 288; *Hooker* v. *Gallagher,* 6 Fl. 357; *Dinsmore* v. *Duncan,* 57 N. Y. 573, 577; *Walker* v. *Scott,* 13 Ark. 644–647; *Miller* v. *McIntyre,* 9 Ala. 638; *Sayre* v. *Lucas,* 2 Stew. 259; *Parks* v. *Duke,* 2 McCord, 381; *Mann* v. *Sutton,* 4 Rand. 253; *Brown* v. *Jordahl,* 18 Rep. 278; *Osborn* v. *Restler,* 35 Ohio St. 99; Biddle on Law of Stock Brokers, 157; *Merritt* v. *Cole,* 9 Hun, 98; *Rawson* v. *Davidson,* 49 Mich. 607; *Birkenhead* v. *Brown,* 5 Hill, 635, 646; *Glyn* v. *Baker,* 13 East, 509; *Couch* v. *Credit Foncier of England,* 29 L. T. R. [N. S.] 259–265; Edw. on Bills [2d ed.] 209; *Hopkins* v. *R. R. Co.,* 3 Watts & Serg. 410; *Dinsmore* v. *Duncan,* 57 N. Y. 577; *R. R. Co.* v. *Howard,* 7 Wall. 415; *Richards* v. *Waring,* 39 Barb. 42; 1 Keyes, 576; Daniel on Negotiable Inst. [3d ed.] 488, §§ 50, 79, 91, 263.)   It having been Sargent's duty to hand over one-third of the bonds to the plaintiff, it is immaterial, as matter of defense, that he subsequently sold them for fifty cents on the dollar, or any other sum, and the Special Term was right in charging defendant with the value of the bonds when Sargent received them. (*G. R. & I. R. R. Co.* v. *Sanders,* 17 Hun, 552; *Cornwell* v. *Co. of Sac.,* 96 U. S. 51, 60; *Bronson* v. *L. C. & M. R. R. Co.,* 2 Wall. 283; Jones on R. R. Securities, § 208; *Lawton* v. *Sweeney,* 8 Jur. 964; *Mercer* v. *Jones,* 3 Camp. 477; *Ingalls* v. *Lord,* 1 Cow. 240; *Roring* v. *Roring,* 2 Rawle, 241; *Decker* v. *Matthews,* 5 Sandf. 439; Parsons on Cont. [7th ed.] 196, 210; *Atkinson* v. *R. P. Co.,* 47 Hun, 167; Sedgwick on Dam. [6th ed.] 609.)

*James C. Carter* and *Edward C. Perkins* for respondent.
The agreement between plaintiff and Underwood constitutes a
contract only enforceable against the assignor, not an assign-
ment. (*Trist* v. *Child*, 21 Wall. 441; *Hoyt* v. *Story*, 3 Barb.
262.) If, as between the plaintiff and Underwood, equity
should apply its maxim that what had been agreed to be done
should be treated as actually done, and thus convert the
plaintiff into an actual assignee, this would be wholly
ineffectual as against Sargent, who took his assignment as a
purchaser for value and without notice. (*Williams* v. *Inger-
soll*, 89 N. Y. 508.) An assignee of a mere equity, like a
chose in action, must, indeed, stand upon the title of his assignor,
and must fail if his assignor had made a prior assignment of
the same equity, but if, in addition to his equity, he succeeds
in acquiring the legal title without notice of the prior assign-
ment, that title cannot be taken from him by the prior
assignee. (*Judson* v. *Corcoran*, 17 How. [U. S.] 611. The
right of Sargent to the proceeds of the settlement is defended,
he having parted with value, indeed, changed his whole situa-
tion, without notice of the prior equity, and the prior equity
of Fairbanks being by his own act a mere latent equity. He
having agreed that it should be and remain of this character
(*Dearle* v. *Hall*, 3 Russ, 1; *Loveridge* v. *Cooper*, id. 60;
*Bayley* v. *Greenleaf*, 7 Wheat. 46; *Murray* v. *Lylburn*,
2 Johns. Ch. 442; *Moore* v. *Holcombe*, 3 Leigh, 597; *Stan-
hope* v. *Earl Verney*, 2 Eden, 810.) If a later assignee suc-
ceeds in obtaining a certificate in his own name before a prior
assignee, thus adding the complete legal title to his former
equitable one, he at once secures himself against the claim of
the prior assignee. (*Kortwright* v. *Coml. Bank*, 22 Wend.
348, 354.) Such an assignment as the one to Sargent is merely
a pledge, and does not carry with it any rights to deal with
the things assigned as owner until the principal debt comes
due, and then only by sale on notice, or by collection of the
entire claim, and after the pledgor has had the opportunity
to redeem. (*Wilson* v. *Little*, 2 N. Y. 443; *Campbell* v.
*Parker*, 9 Brow. 322; *Brownell* v. *Hawkins*, 4 Barb. 492;

*Haskings* v. *Kelly*, 1 Robt. 160; *Dougherty* v *R. Co.*
81 N. Y. 496; *Cowdrey* v. *Vandenberg*, 101 U. S. 573;
*Franklin* v. *Neate*, 13 M. & W. 481; Story on Bailm. § 307;
*Whittaker* v. *Sumac*, 20 Pick. 399; *Weston* v. *Turner*,
17 N. Y. St. R. 502; *Trustees* v. *Wheeler*, 61 N. Y. 113;
*Wheeler* v. *Newbould*, 16 id. 392; *Nelson* v. *Eaton*, 26 id.
410; *Farwell* v. *I.*, etc., *Nat. Bank*, 90 id. 483; 15 J. & S.
418.) The surrender of the pledge of the Zabriskie claim
was a parting with value. Zabriskie having notice of the
pledge, Underwood could not settle without Sargent's con-
sent. (*Jones* v. *Farrell*, 1 De G. & J. 208; *Legh* v. *Legh*,
4 B. & P. 447; *Roberts* v. *Lloyd*, 2 Beav. 376; *Jeffs* v. *Day*,
1 L. R., Q. B. Cas. 373; *Field* v. *Mayor*, etc., 6 N. Y. 179;
*Raymond* v. *Squire*, 11 Johns. 47; *Muir* v. *Schenck*, 3 Hill,
228; *Wheeler* v. *Wheeler*, 9 Cow. 34.) *P. Ins. Co.* v.
*Church*, 81 N. Y. 218, 225.) In the case of a *bona fide*
purchaser for value without notice, equities are eliminated,
and the question of consideration is treated as if it was one
between the original parties, and no equities existed; so
that the rule as to partial failure of consideration is the
same as in a case between the original parties. (*Parish* v.
*Stone*, 14 Pick. 198, 209; *Dresser* v. *R. C. Co.*, 93 U. S. 92;
*Park Bank* v. *Watson*, 42 N. Y. 490; *Gould* v. *Segee*, 8 Duer,
260; *In re I. L. Co.*, L. R. [11 Eq. Cas.] 478; *In re Gomersall*,
L. R., 1 Ch. Div. 137, 148; *Jones* v. *Gordon*, 2 App. Cas. 622;
*Cromwell* v. *Sac*, 96 U. S. 51, 60; *Tobey* v. *Chipman*, 13.
Allen, 123; *Bange* v. *Flint*, 25 Wis. 544, *Baily* v. *Smith*,
14 Ohio St. 396, 403; *Lay* v. *Wissman*, 36 Iowa, 305; Story
on Prom. Notes [7th ed.] § 195.) The release of an insolvent
from his debt is a parting with value. (*Paddon* v. *Taylor*,
44 N. Y. 374; *P. Ins. Co.* v. *Church*, 81 id. 224.) The bonds
in question were negotiable securities. (*Brainerd* v. *N. Y. &
H. R. R. Co.*, 25 N. Y. 496; *Mercer County* v. *Hacket*,
1 Wall. 83, 95; *Gelpcke* v. *Dubuque*, Id. 175; *Haven* v.
*G. J. R. & D. Co.*, 109 Mass. 88, 96; *Illinois* v. *Delafield*,
8 Paige, 527; *Murray* v. *Lardner*, 2 Wall. 110; *E. Bank*,
66 N. Y. 14, 18; *White* v. *V. & M. R. R. Co.*, 21 How. 575;

*Boyd* v. *Kennedy*, 9 Vroom. 146; *Wookey* v. *Poole*, 4 B. & A. 1; *Rumball* v. *M. Bank*, L. R., 2 Q. B. Div. 194; *Gorgier* v. *Mieville*, 3 B. & C. 45; *Goodwin* v. *Roberts*, L. R., 10 Ex. 337, 346; *In re Leland*, 6 Ben. 175.)

FINCH, J. Our first inquiry respects the character and extent of the right which Fairbanks acquired under his contract. We have already held that its terms operated as an equitable assignment to him of one-third or one-sixth of whatever money or property should be collected out of or received from Zabriskie in discharge of the latter's debt. (104 N. Y. 108.) Ordinarily we should content ourselves with a simple reference to that decision. But its correctness has been so challenged on this appeal and assailed with so much of force and ability as to justify on our part a reconsideration of the question in the light of the later argument. Let us, therefore, give our attention to the terms of the contract.

Underwood's claim against Zabriskie grew out of stock transactions. Fairbanks was a lawyer,— and not only that, but one exceptionally versed in the peculiar rules and customs of the stock exchange, and the law governing that class of transactions. He had already rendered services to Underwood for which the latter was in his debt, with probably slight ability to pay unless out of uncertain claims against others. Standing in this relation the parties contracted. Fairbanks agreed to prosecute, and, as far as he was able, collect the specified claims of which that against Zabriskie was one. To that extent his agreement was for the rendition of future services. He also agreed to extinguish, and by his contract did extinguish, the debt due him for past services, taking in exchange the covenants of the new agreement. There was, therefore, ample consideration for the promises of Underwood which followed. These were, that for the services rendered and to be rendered by Fairbanks the latter should receive a fixed share of the money, property, or securities which should be obtained from the debtors named. The claims themselves against such debtors were not attempted to be assigned. The

title to them remained in Underwood as the legal owner. Suits against the debtors were to be and were brought in the name of Underwood, and he alone, by the stipulations of the agreement, was authorized to dictate on what terms settlements should be made, and when and against whom actions should be brought. He, thus, never transferred to Fairbanks the legal title to the claim against Zabriskie, and what he did do was in its ultimate effect one of two things, as it seems to me, necessarily and inevitably. The contract was either a simple agreement for compensation to be enforced against Underwood, or it was an equitable assignment of a definite share of the proceeds of the claim against Zabriskie. Obviously it is something more than and quite different from a mere agreement for compensation measured by results. That would have given to Fairbanks only a personal claim against Underwood, and scarcely served to induce on his part further services and expenses upon a credit already precarious ; and not compensation in general, but a specific share in a specific fund or specific property was the exact and material point of the contract upon which the rights of both parties hinged. Underwood, having liberty to take in settlement from his debtors property or securities, was not to be called upon for a share of their value in cash, or liable generally for a due reward, but was free to throw Fairbanks upon his contract claim for a share of the precise thing received as his sole right and only remedy. On the other hand, the latter was not to depend upon the solvency or promise of Underwood for his pay, but was made secure by a stipulated right to have, as owner, a defined share of the fund or proceeds expected to result from his labor and skill. There could be no legal assignment of a fund not in existence or proceeds not realized, but equity treats them as if existing or realized, and the contract for their receipt by Fairbanks as an equitable assignment of the stipulated share to him, and, as a consequence, makes him the equitable assignee of so much of the debt or demand as is

represented by his share of the proceeds. I think we have never failed to hold this doctrine on a similiar state of facts. We discussed the subject somewhat in *Williams* v. *Ingersoll* (89 N. Y. 508), and there said: " It is a rule in equity that anything which shows an intention to assign on the one side, and from which an assent to receive may be inferred on the other, will operate as an assignment if sustained by a sufficient consideration." In *Thurber* v. *Chambers* (66 N. Y. 49) we inferred an equitable assignment upon facts vastly weaker than those in the present case, and the cases in the federal court of *Wylie* v. *Coxe* (15 How. U. S. 415) and *Trist* v. *Child* (21 Wall. 441) are to the same purport. The test is an inquiry whether the debtor would be justified in paying the debt or the portion contracted about, to the person claiming to be assignee. It is not at all doubtful that Zabriskie, after his liability had been settled at the amount of the bonds which he delivered, and leaving out of view the transaction with Sargent, would have been perfectly protected in paying over one-third of them to Fairbanks. Up to this point the General Term do not differ with us. On the first hearing they explicitly took this ground, and on the last they intimate no change of opinion. They concede the attitude of the plaintiff as an equitable assignee of one-third of the Zabriskie debt. It was reserved for the learned counsel of the respondent to attack that doctrine on the argument here. The pith of his contention is that Fairbanks had none of the powers and rights which make an assignee, and so was none at all; and this because the agreement reserved to Underwood the right to determine when suits should be brought and what compromise should be made. But these reserved rights may have lessened the value of the thing assigned without neutralizing or destroying the assignment itself. They related to the process of collection, and not to the right assigned, except as possibly lessened by that process. If no collection had been needed, if Zabriskie had come with the money in his hand to pay the whole debt, and had been apprised of the contract with Fairbanks, he could have paid over, and it would

have been his legal duty to have paid over to the latter, his share of the debt as the equitable owner and assignee of that share. That under the arrangement made he was at liberty to pay less, and that Fairbanks could not object to his paying less, does not prevent Fairbanks from being the equitable assignee of his share of the debt as settled. The learned counsel for the respondent criticises the language of the agreement, in comparision with that used in the Williams case. In that, he says, the assignee was given a lien upon the fund in express terms. It seems to me that in the present case the language is stronger instead of weaker. Fairbanks was armed with more than a mere lien by its words. He was " *to have* * * * one-third of whatever amount of money, securities or property shall be collected or in any way realized or received." That is, he was to have, to possess, to own as his the stipulated proportion of the precise thing received, that proportion to be ascertained and measured by its amount or value. And that such was the meaning is further indicated by the expression relating to his monthly salary of " money compensation." It is in that manner distinguished from the realized proceeds which he was to have only in their realized form. I have no doubt remaining that, up to this stage of the case at least, our previous conclusion was entirely sound.

But it does not follow that we are yet absolved from a recollection of the reservations to Underwood which accompanied his equitable assignment to Fairbanks, or a further consideration of their effect; for the former followed that transfer by an assignment of his claim against Zabriskie to Sargent as collateral security for a debt due to him. There is no real foundation for the distinction now asserted between the facts on the previous trial and those in the present record as it respects the character of that assignment. The distinction was kindly meant as a route of retreat from an indefensible position, but we must decline to avail ourselves of it. It may be that we then supposed that the written assignment was absolute in form but delivered and taking effect as a collateral security, while now it appears that the collateral character of

the transfer was expressed in the writing itself.   The form is of no consequence.   Whether the collateral character of the assignment was evidenced by the writing or by the parol delivery is immaterial; for the fact itself was fully recognized in our previous opinion.   Again and again, and with even further reiteration, the transfer was described as collateral, and none of us were for a moment misled in that respect; and so we cannot travel the bridge carefully constructed to encourage a retreat, but should consider the question whether we were right or wrong, which is raised anew by the decision of the General Term.

What, then, were the rights which Sargent acquired by the assignment of the Zabriskie debt, first, as against Underwood, and second, as against Fairbanks.   The counsel on both sides appear to agree that as between assignor and assignee the transfer must be deemed to have been in the nature of a pledge.   They unite in saying that a reference to the law governing that class of bailments will accurately describe the relations and rights of the parties, and, so agreeing, we ought to be content.   Waiving then, for the present, any question of rights acquired by Sargent as a *bona fide* purchaser, let us determine and measure those which he acquired under the assignment treated as a pledge.   The pledgee obtains a special property in the thing pledged, while the pledgor remains general owner.   If the property consists of a thing in action the pledgee may sue upon it and collect it or receive voluntary payment of it from the debtor.   The pledgee may require such payment and the debtor cannot resist his title.   To the extent of his debt the pledgee may appropriate the proceeds to his own use, and holds the balance, if any, in trust for the pledgor.   But the pledgee cannot compromise the debt without the assent of the pledgor.   (*Garlick* v. *James*, 12 Johns. 146; *Bowman* v. *Wood*, 15 Mass. 534.)   With that assent he may do so, and, if he does, the question who it is that we must regard as having made the settlement is matter here in dispute between the litigants.   Much depends upon

the facts, and to those we shall recur in their due order, after having measured Sargent's right as against Fairbanks.

The latter was equitable assignee of one-third of the Zabriskie debt, and to that extent was the equitable owner. Putting aside still all questions relating to a *bona fide* purchase, it follows that Underwood could only pledge what he had, and could not incumber the interest of Fairbanks. We so decided on the previous appeal, citing *Bush* v. *Lathrop*, as that case has been limited. Sargent, therefore, became pledgee, or had the rights of a pledgee, only to the extent of Underwood's title, and obtained no right by pure force of the assignment to the interest already owned by Fairbanks. It is true that sometimes where one clothes another with an apparent ownership or power of disposition he will not be allowed to assert his right as against an innocent purchaser dealing upon the faith of such apparent ownership, and the opinion of the General Term applies that doctrine to Fairbanks because, when becoming assignee, he "had placed in Underwood power to act." We need only say as to that suggestion that the counsel for the respondent admits that the doctrine is inapplicable to the facts, although he seeks to enlist in his service the fundamental equity on which it is founded. So that I think we correctly held that Sargent, by his collateral assignment or pledge, acquired no right in to. or against the ownership of Fairbanks.

But, nevertheless, upon what afterwards occurred, the respondent confronts us with a very able argument which seeks to turn the flank of the position thus far maintained. It is founded upon the settlement which was made with Zabriskie, and which appears to have been negotiated by and between three persons, viz.: Underwood, acting for himself, Monell, representing Sargent, and Gray, as agent for Zabriskie. The terms of the arrangement, stated in their legal order, were that Sargent should surrender his assignment to enable Underwood to effectually release Zabriskie; that the latter should thereupon pay Underwood $20,000 in bonds in full of his debt and be wholly discharged; that Underwood should then

pay· Sargent the same bonds in full of his debt, and should be finally released. If I state these facts somewhat differently from the view presented in our previous decision, it is not because there were not strong circumstances sustaining that view. The whole arrangement was planned and negotiated by Sargent and Zabriskie, represented, respectively, by Monell and Gray, Underwood simply giving his assent. The bonds, it is found, did not go through his hands personally, and he never even knew that they were substituted for money, but they passed directly from Zabriskie through Gray to Sargent. And yet the truth is that, upon the theory of a pledge now but not then conceded, it required both Underwood and Sargent to act together and concurrently in order to effect the result. It is said that Sargent did not make the settlement, for he was only pledgee and could not; but, with equal force, it may be urged that Underwood did not, for he was only general owner and could not. The palpable truth is that both acted, and the compromise was the product of their joint action. And so, without any worry over the question as to which of them made the settlement, I am willing to put the facts into what is claimed to be their logical and legal order, and yield to the respondent the benefit of saying that Sargent enabled Underwood to settle and Underwood settled. Upon that assumption it is apparent that Sargent must be put in one of two positions. We are compelled ·to say that he received the bonds from Underwood by force of the assignment which he held and which he surrendered only upon that condition, which is the truth; or that, having abandoned his hold on the Zabriskie debt, he took them simply from Underwood in discharge of the latter's liability. The last alternative may be dismissed because it is contrary to the facts. Sargent never abandoned his hold on the debt. His fingers, once closed upon it, were never unlocked. His surrender of the assignment was on condition of the receipt of its fruits, and they took its place as the thing pledged (*Farwell* v. *I. & T. Nat. Bk.*, 90 N. Y. 483), and subject, as was the debt, to the right of Fairbanks. The pledgee may return the property to the pledgor

for some special purpose without losing his right, and the pledge will remain. (*Macomber* v. *Parker*, 14 Pick. 497.) The surrender of the assignment and the receipt of its fruits were legally at one and the same instant, and there never was a moment when Sargent stood merely in the attitude of a purchaser of the bonds. The situation was, therefore, aptly described by the learned counsel for the respondent in his supplemental brief, although that description was explicitly stated to be for the purposes of his final argument, which it is now our duty to meet. I use his words because I have none which are so accurate and compact. He says " Fairbanks and Sargent were both assignees of a chose in action, that is, holders of a mere equity, and as such assignees it may be admitted, for the sake of the argument, but for no other purpose, that Fairbanks had a better title because it was a prior one. * * * Sargent, having acquired his equity without notice of Fairbanks' right, proceeded to make his title available and reduce the chose in action to possession by inducing Underwood to make a settlement or by making a settlement himself and procuring Underwood's assent to it, whichever way any one may please to put it." That is the learned counsel's sketch of the situation, which corresponds perfectly with the opening sentence of our previous opinion which stated the fundamental question involved. It was a conflict of equities, equal except in time. The learned counsel then formulates his solution of the difficulty. He says, " the rule is that an assignee of a mere equity, like a chose in action, must, indeed, stand upon the title of his assignor, and must fail if his assignor had made a prior assignment of the same equity, but if, in addition to his equity, he succeeds in acquiring *the legal title* without notice of the prior assignment, that title cannot be taken from him by the prior assignee." I concede the rule for the sake of the argument, and may admit for the same purpose, and for that only, that it would end this case in the defendant's favor, were it not for the further fact that Fairbanks not only had the prior one of the two equal equities, but also obtained the

prior legal title to his interest. For, recall events in their order. Gray, who represented Zabriskie in the negotiation, acted for all parties in the excution of the agreement. Underwood gave him a formal release of Zabriskie, but upon the condition that he should deliver it only upon receiving from Zabriskie the stipulated payment. Gray testifies " Mr. Underwood had prepared the release to Zabriskie for the $20,000. He gave it to me and requested me not to deliver it to Zabriskie until I received the $20,000. I took it in that way. * * * He wanted me to hold the release and bonds in escrow for him, Underwood, and when Judge MONELL should bring a release, and the assignment he held against Underwood, he would authorize me to deliver the bonds or money." The moment the release was delivered the bonds became in the legal possession of Underwood through the actual possession of his agent Gray, duly constituted for that special purpose. Underwood, therefore, at that instant, had both the legal title and possession, and it was from and through him, and not from or through Zabriskie, that Sargent acquired his title. At the moment, therefore, when the bonds became Underwood's and in the possession of his agent, the equity of Fairbanks became a legal title to one-third of the bonds in the hands of his co-owner. His equity was gone. The debt to which it pertained was dead and extinguished, and in the instant that the bonds came to the legal ownership of Underwood the share of Fairbanks came to his legal ownership, and the possession of Underwood became his possession. For, consider. Put Sargent and his rights out of the way to simplify the question. If, after the delivery of the release to Zabriskie and the receipt of the payment by Gray, Fairbanks had proceeded to assert his right, is there the least doubt that he could have treated Underwood as a tenant in common with himself of the bonds, or as holding for him his divisible share? I think there can be no question about that. When the bonds struck the hands of Underwood, the equity of Fairbanks became a legal title to the extent of his right. That right was equitable while the proceeds were unrealized, because only

the power of equity could treat them as realized; but when they became actually realized and passed to Underwood as the exact and tangible proceeds contemplated by the contract, there was no longer need of the power of equity to imagine them, for there they were, the very realized proceeds, one-third of which by force of the contract was that instant the property of Fairbanks by a legal title.   Underwood could hold them in no other way than for himself and his associate, and so, not only was the equity of Sargent through his assignment subject to the prior equity of Fairbanks, but the latter drew to himself the legal title prior to the legal title of Sargent.

And here, it seems to me, we get out into the open air where vision becomes clearer, and are enabled to see the incorrectness of the argument founded upon the assumed attitude of Sargent as a *bona fide* purchaser without notice. The counsel's brief declares: "If Underwood never had assigned the Zabriskie claim to Sargent but had received the $20,000 directly from Zabriskie, and had then paid it over to Sargent in consideration of a release by the latter of his debt, there could not have been a pretense that the plaintiff had any just claim upon it.   The equitable owner of moneys cannot follow them into the hands of a purchaser for value without notice."   It is not needful to discuss that proposition, for we now see that it is not an *equitable* owner of *moneys* who pursues, but a legal owner of property following what is his in the hands of one who got no title and could get none, however innocent his action or expensive his contract (*Ballard* v. *Burgett*, 40 N. Y. 314; *Weaver* v. *Barden*, 49 id. 286), it being admitted that, in this branch of the argument, no aid is derived from the doctrine of negotiability in its strict sense. And I think it becomes obvious that, as Fairbanks' equity was prior to that of Sargent, so the former's legal title was paramount to that of the latter.

Nor is the result changed if we disregard the order in which the law arrays the component events of the one completed transaction, and treat them according to the fact as occurring

at one and the same instant of time. In that view there is no priority of legal title in Fairbanks over Sargent; neither is there any in Sargent over Fairbanks, and the legal titles vesting equally and at the same instant the prior equity of Fairbanks is not defeated.

Hitherto I have treated the equities of the parties on their merits as equal, but without overlooking the contention which I promised to recollect, that those of Sargent were superior in their quality because Fairbanks left in Underwood the power to bring or not to bring suits, and the sole right to compromise. We are invited to make ownership the synonym of *dominium*, control, and to measure the respective rights by that standard. Very well, let us do so. Nothing need be said about the first reservation since Sargent took his assignment after suit had been commenced against Zabriskie, and when Fairbanks was actively prosecuting it and had become the master of its movement, and Sargent knew both facts; and now, as to the right to compromise, Fairbanks had only an equitable right to the extent of his share; Sargent had only an equitable right to the extent of his debt; one had an equitable property in the Zabriskie claim; the other had a special property in it which was also equitable; Fairbanks left Underwood apparent owner; Sargent left him general owner with the same outside mask; if Fairbanks had no right to compromise, neither had Sargent; if the former left that power in Underwood, so, also, did the latter. The sole difference is that Sargent could resist a compromise below the amount of his debt, and Fairbanks could not prevent one at all. But that difference is quite balanced by the fact that one equity was supported by new services rendered on the faith of its existence, while the consideration of the other was a precedent debt. Sargent, if his equity failed, could be restored to his original position; he would have lost nothing, but only failed to gain something, and would not be bound by a release fraudulently obtained, or mistakenly given; while Fairbanks could not get back his services and labor wasted and expended in vain. The bonds in dispute were the product almost wholly of the persevering skill of Fairbanks.

The attorney of Underwood in New Jersey describes, as a witness, how utterly he was dependent upon the plaintiff's knowledge and ability. He persevered, until he literally made Zabriskie's life miserable, and drove to his aid the friends who advanced the means of compromise. While Fairbanks was training his guns upon Zabriskie, furnishing the powder and bearing the smoke of the battle, and faithfully earning his stipulated share of results, Sargent was looking to the possible victory from a station out of the smoke and noise as a means of collecting a debt of Underwood, the amount and details of which he did not know. If it is true that Fairbanks notified no one of his rights, at least no occasion seemed to require that notification; while on the other hand Sargent's counsel called upon Fairbanks urging him to push Zabriskie, and never revealed that his client held an assignment of the claim, and meant to have the benefit of the latter's services and leave him to an insolvent for his pay. The equity of Fairbanks was strengthened by his effort to create the fund; that of Sargent was founded on the collection of a desperate debt. That he may not be able to use the product of Fairbanks' labor and skill to repair his own misfortunes in stocks does not, in the least, disturb our sense of justice; so that on a careful comparision of equities, I think, we deal liberally with Sargent when we treat them merely as equal on their merits and in their inherent qualities.

We are thus required to affirm the correctness of our previous decision in all its material and essential elements. If we have departed from some of its details it is because the later argument has led us over a new and different road, and fuller reflection has in some minor matters shifted the balance of judgment; but on the whole case we stand where we did, and satisfied that the plaintiff should succeed.

The question of damages, we think, was correctly decided by the Special Term, and it follows that the judgment of the General Term should be reversed and that of the Special Term affirmed, with costs.

All concur, except GRAY, J., not sitting.

Judgment accordingly.