PEOPLE *v.* E. REMINGTON & SONS.

(*Supreme Court, General Term, Fourth Department.* February 20, 1891.)

PATENTS FOR INVENTIONS—LICENSE—LIABILITY FOR ROYALTIES—RECEIVERS OF LICENSEE.

A chattel mortgage executed by a licensee of a patented invention, on articles manufactured by him under the license, is not a "sale" of such articles, even after default in the payment of the mortgage, within the meaning of the license, which stipulates for the payment of a specified royalty to the patentee for the manufacture and "sale" of the patented article by the licensee; and hence, where receivers of the licensee, subsequently appointed, have redeemed the articles from the mortgage, and then sold the same, the liability for the royalties then accrues, and is the debt of the receivers, to be paid for in full by them, and not the debt of the licensee's estate, to be paid by the receivers as other claims of the estate are paid.

Per KENNEDY, J., dissenting.

For the facts, see majority opinion, 12 N. Y. Supp. 825.

KENNEDY, J., (*dissenting.*) By the agreement between the Lee Arms Company and E. Remington & Sons, the $1.55 royalty to be paid by the latter to the former was only to be paid for each and every gun manufactured and sold, the same to be paid tri-monthly, and at the end of each and every three months from the date of the contract. The actual sale of each gun by Remington & Sons was a necessary condition precedent to entitle the Lee Arms Company to be paid said royalty. Among the arms not sold at the time the receivers were appointed were the following, which Remington & Sons had pledged to the several persons named, and to the number mentioned, as collateral security for the payment of certain debts owing by them:

| | |
|---|---|
| R. J. Dean & Co., | 1,600 rifles. |
| Tradesman's Bank, | 2,000 rifles. |
| Hartley & Graham, | 500 rifles. |
| Thomas Richardson, | 220 rifles. |
| National Mohawk Valley Bank, | 1,000 rifles. |
| Canajoharie National Bank, | 10 rifles. |

Were these arms so pledged by Remington & Sons as security for the payment of the several obligations to the pledgees, respectively, held against said firm, and which had not been sold or disposed of by them at the time the receivers were appointed, sold by Remington & Sons, within the intent and meaning of the contract for royalty between it and the Lee Arms Company? We think the disposition of the guns by Remington & Sons in the manner stated did not amount to a sale, and that the title to each remained in them,

and passed to the receivers at the time of their appointment, subject only to the pledge. This transfer of the guns was in effect a mortgage. The correct definition of a "chattel mortgage" is that it is an instrument of sale, conveying the title of the property mortgaged to the mortgagee, with terms of defeasance, and, if the terms of redemption are not complied with, then at law the title becomes absolute in the mortgagee. To make it a mortgage the effect of the agreement must be such that, by the mere non-performance of the conditions by the mortgagor, the title will be transferred to the mortgagee by force of the agreement. Story, Bailm. §§ 287, 288; 2 Kent, Comm. 582, 583; *Brownell* v. *Hawkins*, 4 Barb. 491; *Langdon* v. *Buel*, 9 Wend. 83; *Brown* v. *Bement*, 8 Johns. 76; *Garlick* v. *James*, 12 Johns. 146; *Stearns* v. *Marsh*, 4 Denio, 227; *Jackson* v. *Dysling*, 2 Caines, 200. On the other hand, a pledge consists of a delivery of goods by a debtor to his creditor, to be held until the debtor's obligation is discharged, and then to be delivered to the pledgeor; the title not being changed during the continuance of the pledge. Story, Bailm. § 286. In case of a pledge as security for the payment of a debt, the only way the pledgee can avail himself of the privilege is to demand payment after default, and, if refused, to sell the property, after notice to the pledgeor, at public sale, and apply the proceeds to discharge the obligation. Until this is done the title remains in the pledgeor. The 500 guns held by Hartley & Graham, and the 10 by the Canajoharie National Bank, were subsequently returned by the respective pledgees to the receivers, without anything being paid to either of them, the debts for which they were pledged having been paid out of the proceeds of other securities held by the creditors. These guns were subsequently sold by the receivers, and the proceeds formed a part of the assets in their hands. These 510 separate from the remainder of those pledged rifles were not, therefore, sold by Remington & Sons before the appointment of the receivers, and as to them no royalty had become due or owing to the Lee Arms Company at the time of their said appointment. We are therefore of the opinion that as to these the receivers contracted the debt for the royalties after their appointment, and that the same should be paid in full, provided the condition of the estate will permit the same to be made out of the assets remaining in their hands. We are also of the opinion that the remaining arms which had been pledged as aforesaid by Remington & Sons, as collateral security for the payment of debts owing by them, and which had not been actually sold by the pledgees, cannot be regarded as having been sold by Remington & Sons, within the meaning of the contract, at the time the receivers were appointed; and said guns having either been returned by the pledgees to the receivers, or subsequently sold by the pledgees and the proceeds applied to discharge the debts, the receivers became liable to pay the royalties, and that such royalties upon these other guns was an obligation contracted by the receivers after their appointment and for the benefit of the estate, and that the same should be paid in full upon the condition and in the manner provided for the payment of the royalties upon the 510 rifles mentioned. If correct in the conclusions reached, it follows that the order made at special term should be so modified as to direct the receivers, out of any property or assets in their hands, to pay the Lee Arms Company the royalty of $1.55 upon the whole 8,410 rifles pledged by Remington & Sons to their creditors for the payment of debts owing by said firm, and remaining in the possession of the pledgees undisposed of at the time the receivers of Remington & Sons were appointed, if the assets in their hands remaining are sufficient for that purpose, with $10 costs and disbursements to the Lee Arms Company.