FRANKLIN B. FREEMAN, APPELLANT, *v.* JOHN S. RICH AND ANOTHER, ADMINISTRATORS OF WELDON C. FREEMAN, DECEASED, RESPONDENTS.

*Sale—assignment of accounts as collateral to a note, evidence thereof—statute of frauds— a mortgage of a chose in action need not be filed — a pledge of a chose in action.*

A merchant borrowed money of his clerk, for which he and his wife gave the clerk their note. They also executed an instrument which recited the note, and which stated that the instrument was intended as collateral security therefor, and that it was agreed that the title to all the unpaid accounts on the merchant's ledger should remain in the clerk's hands until the note was paid, although the merchant's books of account were never formally delivered to the clerk.

The clerk continued in the merchant's employment until the merchant's death, when the claim was presented against his estate, and a reference of the claim was made under the Revised Statutes.

*Held*, that the clerk was entitled to recover.

That the transaction amounted to a sale or assignment of the accounts to the clerk so far as necessary to satisfy the note, and that it was sufficiently evidenced, by a note or memorandum, in writing, to satisfy the statute of frauds.

That if it were regarded as a mortgage the statute relating to filing did not apply, since the mortgage was one of choses in action, and not of goods and chattels.

That if it were deemed to be a pledge it would not, as such, be invalid for want of delivery, a written transfer being sufficient in the case of a pledge of a mere debt.

APPEAL by the plaintiff Franklin B. Freeman from so much of an order of the Supreme Court, entered in the office of the clerk of Wayne county on the 16th day of March, 1892, as denied a motion to confirm the second conclusion of law in the report of a referee, which conclusion gave the plaintiff judgment upon a note for $1,105.33, and directed its payment, so far as possible, from moneys collected by the defendant Rich from accounts due W. C. Freeman, deceased, and standing upon his ledger March 26, 1890.

*L. M. Norton*, for the appellant.

*J. Welling*, for the respondents.

DWIGHT, P. J. :

The claim referred embraced several items, among which was one which arose upon a promissory note for $1,000. The decedent was a country merchant, and the plaintiff was a clerk in his store. Three months before he died the deceased borrowed $1,000 of the plaintiff, for which he gave him his promissory note, to which his wife also attached her name without professing to charge her separate estate, of which, indeed, she had none. The note was accompanied by an instrument in writing in the following terms :

" $1,000.                              " MARION, *March 26th*, 1890.

" On or before January 1, after date, we promise to pay F. B. Freeman, or order, one thousand dollars.

" Value received, with use.
                          " W. C. FREEMAN.
                          " MRS. EMMA FREEMAN.

" This being for collateral security for note as above described.

" And it is hereby stipulated and agreed that the title of all accounts remaining unpaid on said W. C. Freeman's ledger shall remain in said F. B. Freeman's hands until this note is fully paid ; and if such accounts are settled by note, said F. B. Freeman has full power to take same and indorse on note, if he so desires or feels insecure, and apply its value toward the payment of this note until this note is fully paid.

" Signed this 26th day of March, 1890.

" W. C. FREEMAN.

" MRS. EMMA FREEMAN."

The same relation between the parties continued down to the time of the death of the decedent, which occurred only three months after the note and agreement were signed. The books of account were never formally delivered to the plaintiff, but from the nature of his employment it may be assumed that he had the same access to them as the deceased, and that they continued to be used in the business, by both of them until the death of the latter. At that time the plaintiff had received nothing on the accounts, but shortly afterwards the defendants, as administrators, took possession of the books and declined to give them up to the plaintiff on his demand. At the time of the trial they had collected on the accounts existing at the date of the note the sum of $1,023.66, while there was due on the note at the same time the sum of $1,105.33, and the conclusion of law of the referee, which the court at Special Term refused to confirm, was to the effect that the plaintiff was entitled to receive from the defendants the amount so collected on the accounts in question, and that the same should be indorsed on the note. We think the conclusion was entirely correct and that it should have been confirmed.

The contention on the part of the defendants is, that the instrument which accompanied the note was either a chattel mortgage, and so void for not being filed ; or a pledge, and so void for want of a delivery of the thing pledged. We do not see that it is necessary to pronounce it either the one or the other. The instrument is not artistically drawn ; it is true that it declares itself to be collateral for the note described, but at the same time it declares that the title to the accounts is in the plaintiff and shall remain so until

the note is paid. Now, it is apparent that it was not intended that the accounts should remain uncollected until the 1st of January, 1891, when the note was to fall due. By its terms the note was to be paid on *or before* the 1st of January, 1891. If in the meantime persons owing the accounts should offer payment, payment was not to be refused; and if paid, who was entitled to the money but the plaintiff, in whom title to the accounts was vested to the extent of satisfying his note? So, too, it was expressly provided that if parties should settle their accounts by note he might, if he chose, take the notes so given and apply them on the note held by him. The transaction, therefore, seems to have been a sale or assignment of the accounts to the plaintiff to the extent of the satisfaction of his note — the avails thereof, so far as paid in cash or settled by note, to be received by the plaintiff and applied on his note. As a sale or assignment of the accounts, the transaction was evidenced by " a note or memorandum in writing, subscribed by the party to be charged thereby," which completely satisfied the requirements of the statute of frauds. (2 R. S., 136, § 3; Birdseye, 1235, § 13.)

But even if the instrument were to be regarded as a mortgage, it was not void from want of filing, because it was a mortgage of choses in action, and the provisions of the statute in respect to filing have no application to mortgages of that character, but only to mortgages of goods and chattels. (*Booth* v. *Kehoe,* 71 N. Y., 341; *Harrison* v. *Burlingame,* 48 Hun, 212.)

So, too, if the transaction were to be denominated a pledge, it was, for a like reason, not void or ineffectual for want of a delivery of the subject of the pledge. In the case of *Wilson* v. *Little* (2 Comst., 443) it is distinctly held that incorporeal things "like *debts,* money in stocks, etc., which cannot be manually delivered," may yet be the proper subjects of a pledge; and the court in that case say : " There seems to be no reason why any legal or equitable interest whatever in personal property may not be pledged, provided the interest can be put, by actual delivery *or by written transfer,* into the hands, or within the power of the pledgee, so as to be made available to him for the satisfaction of the debt. * * * And debts and choses in action are capable, by means of a written assignment, of being conveyed in pledge." And in *Fairbanks* v. *Sargent* (117 N. Y.,

332) the court say : "If the property consist of a thing in action the pledgee may sue upon it and collect it or receive voluntary payment of it from the debtor. The pledgee may require such payment, and the debtor cannot resist his title. To the extent of his debt the pledgee may appropriate the proceeds to his own use and hold the balance, if any, in trust for the pledgor."

Under the doctrine of these cases it would seem clear that the plaintiff, by the transaction in question, acquired either an absolute title to these accounts to the extent of satisfying the note held by him or such a valid lien thereupon which followed them into the hands of the defendants, as administrators of the deceased, as entitled him to receive the money collected by them thereupon to the same extent.

So far as any charge of actual fraud in the transaction is concerned, there is no finding in the case upon which such a charge can be based. It does appear that there are creditors, other than the plaintiff, but not that the estate is insolvent or insufficient to pay all creditors in full, without resort to assets which had been turned out by the intestate in payment of or as security for an honest debt.

We think the conclusion of law of the referee, to the effect that the plaintiff is entitled to have the moneys collected by the defendants on the accounts outstanding on the 26th day of March, 1890, paid to him toward the satisfaction of his note, was well based upon the findings of fact, and that the report should have been, and should now be, in all things, confirmed and judgment directed for the plaintiff accordingly.

MACOMBER and LEWIS, JJ., concurred.

So much of the order as is appealed from reversed and the report of the referee in all things confirmed, and judgment ordered for the plaintiff accordingly, with costs of this appeal.