(No. 22252.—

JAMES HAMILTON LEWIS, Plaintiff in Error, *vs.* MARY A. BRAUN, Admx., *et al.* Defendants in Error.

*Opinion filed April 21, 1934—Rehearing denied June 8, 1934.*

ANDREW R. SHERRIFF, (RICHARD S. FOLSOM, and THOMAS JAMES NORTON, of counsel,) for plaintiff in error.

ELLIS D. WHIPP, (EDMUND S. CUMMINGS, of counsel,) for defendant in error Mary A. Braun; CASSELS, POTTER & BENTLEY, (EDWIN H. CASSELS, RICHARD H. MERRICK, and RICHARD BENTLEY, of counsel,) for defendant in error the Canadian Pacific Railway Company.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

On March 30, 1931, James Hamilton Lewis, plaintiff in error, (herein called complainant,) filed his amended bill of complaint in the circuit court of Cook county against Mary A. Braun, individually and as administratrix of the estate of Jacob G. Braun, deceased, the Foreman-State Trust and Savings Bank, an Illinois corporation, and the Canadian Pacific Railway Company, a Canadian corporation, as defendants. Mrs. Braun and the railway company filed general demurrers and the bank filed its answer. The chancellor sustained the demurrers, and when complainant elected to stand on his amended bill a decree was entered dismissing the bill, with costs against complainant. On appeal to the Appellate Court for the First District the decree was affirmed. A writ of *certiorari* brings the case here.

The amended bill alleges that complainant, an attorney at law, on July 17, 1920, entered into the following written contract:

"This is to authorize Jas. Hamilton Lewis to act as my attorney and representative in the matter of the shares of the Canadian Pacific railway belonging to me, for the purpose of having the shares properly transferred, and such certificates as are necessary to be issued to me, and for such other steps as are necessary to put the property in my name, in order that I may have clear title, and then to take any other course he feels necessary to secure the dividends which are due on the stock. And I authorize him to make any demands in my name and to take any course in my name that in his judgment is best to bring about the result of my protection and the protection of my property and the fixing of the shares in my name and the collection for me of such sum as is due.

"In the event of my death, should such occur, and the collection of money or the transfer of shares be had after my death, then the said Jas. Hamilton Lewis is to take such course and action with the shares and money as my will would provide or any directions I may have given to my wife or any other person in writing as to my property.
        "(Signed) JACOB G. BRAUN.
"Witness: Joseph P. O'Harra. (signed)

"I approve of the above and to the extent of my own interest authorize Jas. Hamilton Lewis for the same purposes as authorized by my husband.
        "(Signed) MARY A. BRAUN,
            "Wife of Jacob G. Braun.
"Witness: Joseph P. O'Harra. (signed)

"I accept the above named commission and contract of service, leaving the matter of fees and payments for services to be arranged at such time as shall be proper.
        "(Signed) JAS. HAMILTON LEWIS."

The bill further alleges that complainant thereafter "pursued the performance of the aforesaid contract," and on November 27, 1920, entered into a further written agreement "supplemental to the foregoing," as follows:

"Referring to the instrument made by and between James Hamilton Lewis and Jacob G. Braun on July 17th, 1920, (bearing the written approval of Mary A. Braun) providing for the recovery of the shares of stock in the Canadian Pacific Railway

Company, and the accumulated dividends thereon, as in said instrument mentioned, the matter of fees and payments for services in connection therewith is hereby agreed upon as follows:

"On the total amount recovered up to the sum or value of $65,000 the fee and payment for services shall be 20 per cent thereof, and on all recovered in excess of said $65,000 the fee and payment for services shall be 50 per cent thereof. And said Braun will provide all funds for necessary expenses, and make reimbursement for all necessary outlays therefor, without deduction from said fees, provided that said expense fund shall not in all exceed $1000.                   "(Signed) JACOB G. BRAUN.

"(Signed) O. K., Mary A. Braun.
     "(Signed) James Hamilton Lewis,
                    by Andrew R. Sherriff."

The bill further alleges that complainant has at all times, by himself and his associates, "diligently and fully performed said contract on his part, that the same is in full force and effect, and that this amended bill is brought in due course of the performance thereof and in pursuit of the relief, remedies and recoveries thereby contemplated;" that the subject matter of the contract consists of 470 shares of common stock of the railway company of the par value of $100 per share, represented by forty-eight certificates purchased by Jacob G. Braun in the open market at the current market price, with all the unpaid dividends thereon; that he presented the certificates at the proper transfer and registration agencies of the defendant railway company requesting their transfer to and registration in his name, but it refused to make such transfer and registration or to issue new certificates in lieu thereof, as requested; that Braun also demanded of the defendant railway company the payment to him of all unpaid dividends which had been declared on the shares after July, 1914, but was likewise refused; that Braun was a resident of Chicago and died there, intestate, in February, 1921; that Mary A. Braun was appointed administratrix of his estate and still continues as such; that the certificates are held by the defendant bank as agent and cus-

todian for the administratrix and the estate of Braun, "subject to the right of your orator to have possession of same for all proper uses and purposes in accordance with the above described contract and supplemental agreement, and for the recovery of all rights, benefits and emoluments pertaining thereto, and for the purposes of this suit."

The bill further asserts, in part, that by virtue of the agreement, and because of the subsequent acts and course of conduct of the parties pursuant thereto, and the pecuniary expenses necessarily incurred by complainant in course of his performance thereof, he is in equity the assignee of a specific portion of and has an equitable lien upon the certificates and shares of stock, "being in themselves the cause of action and subject matter of said contract, and upon all claims, demands and causes of action held or claimed against the said defendant, Canadian Pacific Railway Company, by or for said Jacob G. Braun in his lifetime, and since then by or for any of his heirs or legal representatives;" that complainant has served due notice upon the defendant railway company of his rights by virtue of the contract; that the present value represented by the certificates, exclusive of dividends, is about $94,000; that there is now due from said company, on account of dividends withheld, the sum of $75,000; that the excuses given by the company for refusing to transfer the shares and for refusing to pay over the accumulated dividends thereon were, that the stock had been subjected to adverse claims asserted against it by the custodian of enemy property of Canada growing out of proceedings had in Canada during the World War on the supposition that they belonged to the then foreign enemies of Canada, but that, as a matter of fact and law, all such adverse claims were and are groundless and void and were not lawful grounds for depriving Braun or his heirs, next of kin or legal representatives, or complainant, of any of the shares of stock and dividends thereon.

The bill further alleges that after the death of her husband, Mary A. Braun, in her individual right and as administratrix of the estate, "fully recognized the existence and binding force of said contract and supplemental agreement, and expressly elected to continue, and did continue, in the performance thereof on her part with your orator for a long period of time;" that after making the contract, complainant diligently endeavored to prevail on the custodian of enemy property of Canada to abandon his claims or to pay and settle for the stock on reasonable terms in money; that in January, 1925, this official offered to pay to complainant the sum of $58,750 in cash, a larger sum than Jacob G. Braun paid for the certificates, but defendant Mrs. Braun refused to accept this offer, and thereafter, through other persons, she hindered and embarrassed the continued negotiations by complainant to secure better terms in settlement, with the result that the cutodian because of such interference refused to negotiate further and it became necessary to resort to litigation against the railway company for recovery of the shares and dividends; that complainant, acting under authority of the contract, in June, 1925, instituted a suit in equity in the District Court of the United States in the name of himself and Mrs. Braun, individually and as administratrix, as complainants, against the railway company to compel the transfer of the shares and the payment of the accumulated dividends thereon; that complainant devoted a great amount of time and professional skill and labor to the prosecution of this suit, but that Mrs. Braun, the co-plaintiff there, by interposing repeated objections to her joinder as co-plaintiff and by demanding her release therefrom, all in violation of her contract and the rights of complainant thereunder, so hindered and embarrassed its prosecution in that court, and on appeal in the United States Circuit Court of Appeals, that for want of necessary parties plaintiff the suit was not decided on the merits of the bill and the evidence

against the railway company, but the entire litigation, covering the period from June, 1925, until October, 1930, was rendered futile and of no effect; that Mrs. Braun has thus refused, and continues to refuse, to coöperate with complainant, under the contract, in the prosecution thereof but has wrongfully aided and assisted the railway company to defeat the litigation, and that the railway company has aided her to violate her contract with complainant and to hinder and embarrass the litigation and to prevent a recovery of the shares and property, and that such conduct constituted an unconscionable method of coöperation between them against the contract and against the rights and equities of complainant, for which there is no adequate remedy at law.

The prayer for relief is both specific and general, and all based primarily upon the granting to complainant, by virtue of his contract, of equitable rights in the subject matter thereof. He seeks the aid of a court of equity to establish these rights either (1) by way of an equitable lien upon and a *pro tanto* assignment of the railway stock and dividends due thereon, or (2) by a statutory lien in his favor as an attorney. If he is entitled to relief in either of these respects much of the other remedial relief prayed for in the bill would follow as a natural result.

Our first inquiry is concerned with the character and extent of the right which complainant acquired under his contract. If he was entitled to any part of the equitable relief prayed for in his bill the chancellor erred in sustaining the general demurrer and in dismissing the bill for want of equity.

The judgment of the Appellate Court is our immediate object of review by this proceeding. That judgment is predicated almost entirely upon the decision of the United States Circuit Court of Appeals, Seventh District, in the case of *Lewis* v. *Canadian Pacific Railway Co.* 39 Fed. (2d) 834. A decision of the United States Circuit Court of Appeals,

while entitled to respect, is not binding upon this court, even though that decision was given in respect to the same controversy now in this court, unless it operates by way of estoppel. (*Spring Valley Coal Co.* v. *Patting,* 210 Ill. 342.) Aside from this, it is obvious that if the judgment of the Federal court was erroneous, the judgment of the Appellate Court, based almost entirely upon the decision of the Federal court, would likewise be erroneous. An examination of the opinion of the Federal Circuit Court of Appeals shows that its construction of the contract between Lewis and Braun hinges entirely upon the assumption that the contract terminated at Braun's death. We cannot agree with this conclusion reached by the Federal and Appellate Courts.

It is true that whatever interest complainant has is derived from the two agreements dated July 17 and November 27, 1920. The agreements clearly expressed the purpose of Jacob G. Braun and Mary A. Braun, his wife, in authorizing complainant to act as their attorney, to take such steps as might be necessary to secure the transfer of the railway stock to Braun, "and then to take any other course he feels necessary to secure the dividends which are due on the stock." It further authorizes complainant "to make any demands in my name and to take any course in my name that in his judgment is best" for those purposes. Then follows this significant phrase: "In the event of my death, should such occur, and the collection of money or the transfer of shares be had after my death, then the said Jas. Hamilton Lewis is to take such course and action with the shares and money as my will would provide or any directions I may have given to my wife or any other person in writing as to my property." This sentence indubitably shows that at the time the contract was made the parties did not expect it to terminate upon the death of Braun, but, on the contrary, expressly provided for that contingency, so that Braun's purpose, if then unconsum-

mated, could be carried out in the same manner. Failure of Braun to leave a will, or any written directions to his wife or other person stating what distribution he desired made of the money and shares which might be collected or transferred after his death, does not detract from the plainly expressed purpose of the contract authorizing the collection of money or the transfer of shares after Braun's death. In such a case, where no will or other provision has ·been made, the distribution of any property collected would be made in accordance with the laws governing the disposition of intestate property. The primary purpose of Braun in making this contract was to secure the transfer of stock and the payment of dividends to himself or others, either during his lifetime or after his death, and his own failure, after executing this contract, to leave a will or other written instrument designating certain beneficiaries to receive this property cannot be construed to indicate any intention on his part to revoke that part of the contract and thus make it terminable upon his death. We hold that the contract clearly evidences the intention of the parties for any necessary proceedings to bring about the transfer of the stock and collection of the money thereunder after the death of Braun.

Since complainant, under the contract, had the right and duty to continue in such manner as "in his judgment is best" for "the collection of money or the transfer of shares" after Braun's death, it follows that the authorities cited in support of the erroneous reasoning of the Appellate Court are beside the point. Under the allegations of the bill and the broad prayer for relief the chancellor had ample authority to do complete equity between all the interested parties. This was not simply a suit to establish a lien upon the objects recovered, but was also a suit to recover the shares and dividends for the benefit of the estate of Braun as well as for complainant. Under the peculiar circumstances related in the bill complainant was

compelled to bring the suit in his own name as complainant, as, according to these allegations, Mary A. Braun and the railway company had strangely confederated their interests in a common effort to defeat his purposes. Acting in this direction, Mrs. Braun, after the death of her husband, had refused an offer of more money than her husband had paid for the stock and had withdrawn as coplaintiff in the suit filed against the railway company in the Federal court. The record itself furnishes sufficient proof of the contractual liability of Mrs. Braun and of her subsequent refusal to be bound thereby. By signing the contract with her husband she had expressly authorized complainant to proceed and take action in her name—a course which she later thwarted by withdrawing from the suit and employing another attorney to intervene. These disturbing circumstances prevented a hearing on the merits in the Federal courts and add further reason why the Illinois courts, when confronted with the different and broader issues in this new proceeding, should have disregarded the former litigation and not based their respective opinions largely upon it.

On the allegations of the bill we think complainant is entitled to relief in a court of equity—relief not only for himself but for the estate of Jacob G. Braun, deceased. Without considering his other remedies, it is sufficient to say that complainant was given certain equitable rights under the contract, and that these rights were not extinguished by the death of Braun but are in danger of being lost by the unjust course of Mrs. Braun unless a court of equity intervenes. (*Smith* v. *Young*, 62 Ill. 210.) The matter of fees to be paid to complainant was not left to subsequent arrangement between the parties for reasonable compensation but was definitely fixed by written contract at certain percentages of the total sum collected. This was sufficient to constitute an equitable assignment. (*Fairbanks* v. *Sargent*, 117 N. Y. 320, 22 N. E. 1039.) An equitable assignment is such

an assignment as gives the assignee a title which, though not cognizable at law, equity will recognize and protect. (*Story* v. *Hull,* 143 Ill. 506; Abbott's Law Dict.) There must be an implied appropriation of the fund, or of some designated part, proportion or percentage of it, to act as an equitable assignment. *Story* v. *Hull, supra; Wyman* v. *Snyder,* 112 Ill. 99.

Defendants in error contend that the lien should be denied here on the authority of *Cameron* v. *Boeger,* 200 Ill. 84. In that case, however, the words of the contract were construed as a personal covenant to pay, while the contract here has no words capable of such construction but it imposes the compensation directly onto the *res,* so the implication of lien in justice to the attorney necessarily applies. The refined distinction observed in *Cameron* v. *Boeger, supra,* appears also with explanation in *DeWinter* v. *Thomas,* 34 Ct. of App. D. C. 80, 27 L. R. A. (n. s.) 634, but it was disregarded by the same court in the later case of *Kellogg* v. *Winchell,* 273 Fed. (Ct. of App. D. C.) 745, where adequate rights and relief were accorded to the attorney under his contract.

Upon open analysis the elements of an equitable lien under such contracts for a contingent fee, as alleged here, are simple and obvious. In making such a contract the attorney impliedly covenants to perform all advisable services diligently and in good faith to accomplish the desired result, in consideration for which, the client owning the cause of action, or the *res,* necessarily obligates himself (1) to hold and preserve it subject to the services of the attorney and his right to share in the proceeds, (2) to convert it into the proceeds when they shall become available, and to divide them with the attorney in the proportions as agreed. Such a contract inevitably imposes upon the subject matter an implied or equitable lien or trust for the security and the ultimate compensation of the attorney. Also, for the same reasons, the relationship is not a mere

power of attorney but is a bilateral contract between the parties. *Grapel* v. *Hodges,* 112 N. Y. 419.

It is clear that complainant did all that he could reasonably be expected to do to secure and protect the interest of Braun in the railway stock. He had negotiated with the custodian of enemy property of Canada and had litigated the subject matter for five years in the Federal courts under adverse circumstances. He had assumed control of the litigation and was openly engaged in its prosecution, seeking full recovery for the estate of Braun. The alleged fact that his efforts there were finally prevented by the opposition of Mrs. Braun creates the presumption that they would have been successful in the absence of such prevention, (*Foreman State Trust and Savings Bank* v. *Tauber,* 348 Ill. 280,) and so relieves the bill of any deficiency because recovery has not yet been achieved. Every consideration of equity requires that the rights of both complainant and this estate be fully protected. It cannot be conceived how the interests of Mrs. Braun would be adversely affected by such a proceeding, and she has filed no cross-bill asserting any rights different or opposite from those claimed in behalf of the estate. It is immaterial whether she is joined as party complainant or defendant in this proceeding, for equity will consider and adjudicate the rights of all the parties according to the real nature of the transaction, without regard to its form.

Aside from any question of equitable lien, the amended bill in this case, as above stated, presented unusually strong grounds for equitable interference. A bill in equity may be maintained by a great variety of interests in the subject matter. Representation of a future intention absolute in form, when deliberately made for the purpose of influencing the conduct of the other party, and who acts upon it, is generally the source of a right and may amount to a contract enforcible by a court of equity. (*Luttrell* v. *Wyatt,* 305 Ill. 274; 2 Pomeroy's Eq. Jur. (4th ed.) 1811.) This

broad principle, over and above the specific definition of a lien, was evidently the motive of the decision in *Kellogg* v. *Winchell, supra.*

It is urged by defendants in error that there can be no lien before there is a recovery, as there is no *res* or subject matter upon which an equitable lien may attach. This statement does not accord with the facts in this case, as the allegations of the bill show there is a definite *res* involved in this proceeding, consisting of forty-eight stock certificates, with serial numbers and full description given. It is not denied that this stock actually exists, and the sole purpose of the contract was to secure its transfer and the collection of dividends already declared upon it. Where an attorney and a client enter into a contract for a contingent fee imposed upon the recovery of certain money or things, equity creates, by implication, a present lien upon an existing *res* for the security of the attorney while doing his work.

The amended bill showed on its face that complainant, and those whom he was undertaking to represent, had an interest in the subject matter or in the result of the litigation and had no adequate remedy at law. It alleged grounds of right and prayed for different forms of relief. Many of the allegations in support thereof were matters of fact which were tendered, with the offer of proof thereof, by the evidence. Complainant having clearly shown his title and interest in the subject matter of the suit, coupled with a present right to sue and a right to relief, his title may be legal or equitable. Such interest, whatever it may be, existing at time suit is brought, must be shown. (21 Corpus Juris, 398.) An equitable right is distinct from the general title. It must be shown if it exists separate from the general title or if the two are vested in the same person. (37 Corpus Juris, par. 5, p. 308.) So, where the transaction is evidenced by written instruments, they should be construed in the light of

such extrinsic circumstances as will aid in their interpretation. (5 Corpus Juris, 910.) It follows that the rights of complainant, and the relief in the different forms prayed for, could not be tested by demurrer without foreclosing him from his right to establish by proof the matters of fact alleged and which are extrinsic to the contract. The circuit court therefore erred in sustaining the demurrers and dismissing the amended bill for want of equity. In view of the ample equities inherent in the bill, as has already been observed, it is unnecessary to consider the claim of a statutory lien on the subject matter based upon the Attorneys' Lien act, which also has been extensively asserted in the brief for plaintiff in error.

The judgment of the Appellate Court is reversed and the cause remanded to the circuit court, with directions to overrule the demurrers and for further proceedings in accordance with this opinion.

*Reversed and remanded, with directions.*

Mr. JUSTICE DEYOUNG, dissenting:

The opinion of the court ignores the established distinction between an actual assignment of an interest in a fund and a mere promise or agreement to pay out of the fund when it shall be collected or recovered. In order that there may be an equitable assignment creating an equitable property, there must be a specific fund, sum of money, or debt, actually existing or to become so *in futuro,* upon which the assignment may operate, and the agreement, direction for payment, or order, must be, in effect, an assignment of that fund or of some definite portion of it. (3 Pomeroy's Eq. Jur. (4th ed.) sec. 1280; *Hibernian Banking Ass'n* v. *Davis,* 295 Ill. 537; *Cameron* v. *Boeger,* 200 id. 84; *Story* v. *Hull,* 143 id. 506; *Wyman* v. *Snyder,* 112 id. 99). Conversely, a mere promise or executory agreement to pay a definite or ascertainable sum out of a particular fund when it shall be collected or recovered, does

not operate as an equitable assignment. (*Trist* v. *Child,* 21 Wall. 441; *Christmas* v. *Russell,* 14 id. 69; *Rogers* v. *Hosack,* 18 Wend. 319; *Hibernian Banking Ass'n* v. *Davis, supra; Cameron* v. *Boeger, supra; Story* v. *Hull, supra; Wyman* v. *Snyder, supra*). The retention of control by the promisor over the fund recovered precludes the existence of such an assignment. *Lewis* v. *Canadian Pacific Railway Co.* 39 Fed. (2d) 834; *Spellman* v. *Bankers' Trust Co.* 6 Fed. (2d) 799; *Thomas* v. *New York and Greenwood Lake Railway Co.* 139 N. Y. 163; *Williams* v. *Ingersoll,* 89 id. 508; *Story* v. *Hull,* 143 Ill. 506.

Contracts similar to the one in controversy have been construed by this court. The agreement in the case of *Cameron* v. *Boeger,* 200 Ill. 84, provided that three attorneys should receive as compensation for their services in the prosecution of certain litigation one-third of whatever was "realized or obtained." It was held that the clients agreed to compensate the attorneys out of the proceeds of the litigation; that the agreement depended, for its performance, wholly upon the personal responsibility of the promisors, and hence that it did not operate as an equitable assignment. The cases of *Story* v. *Hull,* 143 Ill. 506, and *Wyman* v. *Snyder,* 112 id. 99, cited in the majority opinion, are to the same effect. Neither supports the conclusion of the majority.

The decisions in *Smith* v. *Young,* 62 Ill. 210, and *Fairbanks* v. *Sargent,* 117 N. Y. 320, are also relied upon to show the existence of an equitable assignment to the plaintiff in error. The bill in *Smith* v. *Young* charged that Ezekiel Smith, an attorney, made a contract with Young & VanKleek to collect a debt secured by land in LaSalle county; that he was to receive one-fifth of the proceeds, whether land or money, for his services; that Smith prosecuted a suit in chancery to a final decree; that he caused the land to be sold and a certificate of purchase to be issued to Young and that Young & VanKleek refused to recognize

his rights. The relief sought was a decree for an undivided one-fifth of the land, or, in case of redemption, for one-fifth of the proceeds. From the facts disclosed by the bill, it is apparent that the contract retaining Smith was an appropriation of a share of the proceeds of any recovery and not merely a personal agreement to pay a fee contingent upon collection.

Similarly, in the case of *Fairbanks* v. *Sargent, supra,* an equitable assignment was declared to exist in the subject matter of the recovery. Leland Fairbanks, an attorney, entered into a contract with Henry A. Underwood to collect a claim exceeding $100,000 against John J. Zabriskie. By the contract Fairbanks was to receive "one-third of whatever amount of money, securities, or property shall be collected, or in any way be realized or received, (whether on settlement or without settlement), on account of such of said claims as shall be put in suit." Pursuant to the agreement, Fairbanks instituted an action against Zabriskie. While the suit was pending Underwood assigned his claim to Henry W. Sargent as collateral security for a debt. Later, and without Fairbanks' knowledge, a settlement was made between Underwood and Zabriskie by which certain non-negotiable bonds having an aggregate par value of $20,000 were transferred to Sargent. Fairbanks then brought an action against Sargent to recover one-third of the bonds, or of their value. The New York Court of Appeals held that the agreement between Fairbanks and Zabriskie created an equitable assignment. (*Fairbanks* v. *Sargent,* 117 N. Y. 320; *Fairbanks* v. *Sargent,* 104 id. 108). In both decisions the court expressly recognized the distinction between an assignment of a part of a fund and a promise to pay out of the fund when created. "It is to be observed," the court said in its first decision, "that plaintiff's claim—grows wholly out of the interest transferred to him by force of his agreement. It is also important to notice that this contract does not contain a provision

by Underwood to pay plaintiff from the fund produced, or otherwise, but is an engagement that plaintiff shall have one-third of the proceeds of the collections in specie, or in such form as they shall be received from the debtor."

The agreement dated July 17, 1920, purports to be merely a commission and contract for services, leaving the matter of payment for such services to be subsequently arranged. In both the original and the supplementary agreements it is provided that if a recovery of the shares and the accumulated dividends thereon shall be effected, the certificates representing the shares shall be transferred to and issued in the name of Braun in order that he may have clear title. Likewise, it is stated that the dividends are to be collected for Braun. The supplementary agreement fixes the measure of compensation and requires the client, subject to a maximum limitation, to defray the expenses of the litigation. No portion of or interest in the subject matter is assigned to or set apart for the plaintiff in error. The contracting parties clearly intended that the sole right to the shares and the accumulated dividends should remain in Braun. The agreement that the plaintiff in error should receive as his compensation a designated percentage of the amount collected was nothing more than a promise by Braun that he would pay such compensation out of the amount recovered; and for the performance of the agreement, the plaintiff in error depended solely upon Braun's personal responsibility. Manifestly, the agreement to pay specified percentages out of such sums as eventually may be collected is not an actual appropriation or assignment of any distinct portion of these sums.

The majority of the court declares that, in making a contract such as is involved in the case at bar, the attorney "impliedly covenants to perform all advisable services diligently and in good faith to accomplish the desired result, in consideration for which, the client owning the cause of action, or the *res*, necessarily obligates himself (1) to hold

and preserve it subject to the services of the attorney and his right to share in the proceeds; (2) to convert it into the proceeds when they shall become available, and to divide them with the attorney in the proportions as agreed. Such a contract inevitably imposes upon the subject matter an implied or equitable lien or trust for the security and the ultimate compensation of the attorney." Referring to the plaintiff in error, it is further declared in the opinion of the majority, that "The alleged fact that his efforts there were finally prevented by the opposition of Mrs. Braun creates the presumption that they would have been successful in the absence of such prevention, (*Foreman State Trust and Savings Bank* v. *Tauber,* 348 Ill. 280), and so relieves the bill of any deficiency because recovery has not yet been achieved." The opinion of the majority concludes with the declaration that "It follows that the rights of complainant, and the relief in the different forms prayed for, could not be tested by demurrer without foreclosing him from his right to establish by proof the matters of fact alleged and which are extrinsic to the contract."

The first quotation, it is respectfully submitted, is not a correct statement of the law. With respect to the second, it may be observed that no such presumption of success arises, and that it cannot supply an inherent defect in the bill of complaint. Concerning the third, proofs without supporting allegations are unavailing, and the sufficiency of the bill of complaint to state a cause of action was properly tested by the demurrers of the defendants in error.

The judgment of the Appellate Court and the decree of the circuit court, in my opinion, should be affirmed.

Mr. Justice Stone: I am unable to find in the contract and supplemental contract here under consideration, the essential elements of an equitable assignment. I concur in the views expressed in the foregoing dissenting opinion.