Frank T. Jordan, Plaintiff-Appellee, v. The Ray Schools-Chicago, Inc., a Corporation, Defendant-Appellant.

Gen. No. 49,232.

First District, Fourth Division.

May 13, 1964.

Henry H. Caldwell, of Chicago, for appellant.

Frank T. Jordan, of Chicago, appellee, pro se.

On Rehearing

MR. JUSTICE DRUCKER delivered the opinion of the court.

1

This is an appeal from a judgment of the Circuit Court ordering the payment to plaintiff of $13,223 for attorney's fees.

Although the court reserved jurisdiction to determine, after reference to a master, alleged breaches of contract on the part of defendant and what damages, if any should be allowed, the court properly certified that there was no reason to delay enforcement or appeal of the judgment under Section 50(2) of the Civil Practice Act (Ill Rev Stats, c 110, § 50(2)). Plaintiff filed a cross-appeal from a finding against the plaintiff for alleged disbursements.

In May 1954 the parties entered into a written agreement under the terms of which plaintiff was to represent defendant in the prosecution of its claim against the United States Veterans Administration for tuition and other charges under the G. I. Bill of Rights. The following provisions covered fees:

> It is understood and agreed that the school shall receive at least the minimum sum of $80,000. In the event that amount shall be all that shall be recovered, for such services, then, no charge shall be made by you, Mr. Jordan for your legal and professional services in behalf of the School. However, if and in the event an amount exceeding the $80,000 shall be obtained for the school, then Mr. Jordan shall be entitled to and shall receive for his said services, an amount equal to twenty (20%) per cent of any and all sums that shall be paid and received by the School, up to and including the payment to the School of the sum of $125,000.

> However, should the sum of the payment to the School, exceed $125,000 for the above services, then and in that event, Mr. Jordan shall be entitled to, and he shall be paid twenty (25%) five- per cent, of any and all sums that shall be re-

2

ceived by the School in excess of ($125,000) fees above provided to be paid additionally.

In the following July plaintiff claimed a breach of contract and demanded reasonable customary fees because Mrs. Ray, president of defendant corporation, tried to settle a claim in Washington for $62,000, without plaintiff's knowledge or consent. At defendant's request plaintiff continued to do some work, and prior to a hearing set for November 17th told Mrs. Ray that she would have to cancel the first contract and sign a new one or that she would have to obtain new lawyers. On November 13, 1954, she signed the second contract on behalf of defendant which provided for a 20% contingent fee on all sums recovered up to $125,000 and 25% over that amount. In October 1955 plaintiff and defendant executed another contract which provided for an additional 10% contingent fee. In 1957 defendant received $127,231 from the Veterans Administration and promptly paid plaintiff $24,946.26 which purportedly represented 20% of the sum recovered. ($500 seems to have been deducted but no point has been made concerning it.)

Plaintiff brought this action to determine his reasonable percentage of the sum recovered for fees. His complaint also alleged that defendant breached its contract by not permitting him to proceed with the case and prayed that defendant be compelled to finance and cooperate in the further prosecution of its claim and that the court determine the amount of plaintiff's fee, if and when an additional recovery is finally effected. Count II of the complaint asked in addition for $11,210.78 on an account stated for expenses. Defendant filed a counterclaim praying that the second and third contracts be declared void and that the first contract be decreed to be the only valid agreement between the parties and that part of the moneys heretofore paid plaintiff be returned to the defendant.

3

It was evidently stipulated in the lower court that the judgment order covered all the issues raised in both the complaint and the counterclaim and although there is no formal specific finding with respect to the counterclaim, the court's judgment order expressly states that "This case has been tried upon the issues formed by the plaintiff's third amended complaint, the answer and counterclaim and the plaintiff's reply to the answer and counterclaim." On oral argument before this court this position was reiterated.

The judgment order found (1) that the first contract of May 13, 1954, was abrogated and superseded by the written second contract of November 13, 1954, and that plaintiff was entitled to 20% of the amount recovered or $24,946.26; (2) that the contract of October 22, 1955, for an additional 10% fee was valid and binding; (3) that plaintiff was entitled to an additional $13,223; (4) that plaintiff was not entitled to any sum on account of alleged disbursements and payments of expenses.

Since the first contract is clear and unambiguous and can be given but one meaning, its interpretation is a question of law for the court. Schneider v. Neubert, 308 Ill 40, 139 NE 84; Bertlee Co., Inc. v. Illinois Pub. & Printing Co., 320 Ill App 490, 52 NE2d 47. Under its terms if a recovery of $127,231 was had, plaintiff was entitled to 20% of the first $125,000 and 25% of the balance. The same result would ensue from the second contract. Therefore the plaintiff is entitled to retain the $24,942.26 he received.

Defendant argues that the third contract of October 22, 1955, for an additional 10% is void because of lack of consideration. The record reveals but sparse references to this agreement. Although Mrs. Ray testified that she refused to make any change and allow him expenses, she did sign the third contract because of her understanding that plaintiff "had to work some kind of a political thing to get it paid and that's

4

what he was doing that time, and he needed more money." Plaintiff testified that the increased compensation represented by this contract was necessitated by unexpected resistance to payment by the Veterans Administration, and that it was desirable to hire someone to assist him in overcoming the delay.

We find that at the time the contract of 1955 was entered into the relationship of attorney and client existed. The law of this state regarding contracts between attorney and client entered into while the parties are in this relationship was well described in the case of Awotin v. Abrams, 321 Ill App 304, 52 NE2d 827. The court there stated:

> Where a contract is entered into after the relation of client and attorney exists, such a contract is *presumptively fraudulent* and the burden is on the attorney to show affirmatively the utmost good faith and the absence of undue influence, etc. Elmore v. Johnson, 143 Ill 513; Miller v. Lloyd, 181 Ill App 230. This doctrine has never been departed from by our Appellate or Supreme courts but has often been reiterated. Goranson v. Solomonson, 304 Ill App 80; Woods v. 1st Nat. Bank of Chicago, 314 Ill App 340. (Emphasis added.)

The Awotin case involved a suit by a client against his attorney for the failure of the latter to accept a settlement offer. The attorney counterclaimed for fees allegedly due him from the client under a purported oral contract executed while the attorney-client relationship continued. In that case, as here, the lawyer's claim for additional fees was based on supposed unforeseen difficulties in the resolution of the client's case, viz., the necessity for the attorney to bring a suit in the Federal courts to enforce the client's rights. The court there held that the original contract between the lawyer and client contemplated that the attorney would see the case through to its conclusion, and that there-

5

fore the subsequent contract lacked consideration since, under it, the defendant was required to do no more than he was responsible for under the terms of the original agreement.

We believe that this is also the situation in the case at bar. Under the terms of the first contract plaintiff agreed that his contingent fee applied to "any settlement or compromise . . . or the prosecution of any claim to enforce the payment thereof"; under the second agreement recovery "by suit, compromise or otherwise" was provided and also that "this is the only agreement between the parties for the personal services of Frank T. Jordan from and after date hereof." The third contract based on the premise of "personal services" required payment of an additional 10% fee "of all amounts of money received by suit, compromise, settlement or otherwise." There was no reservation in the first two contracts of the right to charge increased fees in case of unforeseen difficulties. The only explanation for additional fees is the need for money to expedite collection of the claim after it had been allowed. Applying the burden of proof required by the Awotin rule in cases where the relationship of attorney and client exists, we must agree with the defendant that the alleged third contract between the parties was void for lack of consideration.

Plaintiff, as cross-appellant here, also urges that the court erred in refusing to hear evidence concerning his claim for advancements for expenses and in denying recovery in any sum for reimbursement of disbursements under Count II of his Complaint.

Both of the agreements were silent in regard to which party was to bear expenses. The defendant gave plaintiff $500 for his first trip to Washington for which defendant has been credited in the accounting of expenditures. An attorney may in good faith advance expenses as a matter of convenience, but sub-

6

ject to reimbursement. Canon 42, Canons of Professional Ethics of the Illinois State Bar Association and Chicago Bar Association. Plaintiff's claim is for $11,210.78 for expenditures which include $2366.33 for transportation between Chicago, Washington, D. C. and New York; $490.30 for stenographic services; the balance being for lodging, meals, taxicabs, incidentals and interest.

For the reasons above stated, the finding of the Circuit Court that plaintiff is entitled to 20% or $24,946.26 under the contract of November 13, 1955 is affirmed; * the judgment finding the contract of October 22, 1955 valid and awarding plaintiff $13,273 as additional fees thereunder is reversed; the judgment for defendant on plaintiff's claim in Count II for moneys advanced as disbursements for expenses is reversed and remanded for further hearing by the trial court and for a determination of what disbursements are properly allowable to the attorney on Count II of his claim.

Affirmed in part, reversed in part, reversed and remanded in part.

ENGLISH, P. J. and McCORMICK, J., concur.

---

* The same amount would be due under the contract of May 13, 1954.