HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF CENTRALIA, Plaintiff-Appellant, v. ARTHUR COOK *et al.*, Defendants-Appellees.

Fifth District   No. 5—87—0330

Opinion filed June 1, 1988.

Patricia L. Simpson, of Lackey & Warner, P.C., of Centralia, for appellant.

Law Offices of Terry Sharp, P.C., of Mt. Vernon, and Mike Reed, of Crain, Cooksey & Veltman, Ltd., of Centralia, for appellees.

JUSTICE KARNS delivered the opinion of the court:

Plaintiff Home Federal Savings and Loan Association of Centralia (Home Federal) brought an action in the circuit court of Marion County seeking a determination of the priorities of various lienholders to the proceeds of an insurance policy. The facts were stipulated by the parties and, after a bench trial, the court entered an opinion and judgment ordering that the proceeds be paid first to defendant Crain, Cooksey & Veltman, Ltd. (Crain), and the remainder to Home Federal. Home Federal appeals.

On September 29, 1978, Arthur and Ruth Cook, owners of a certain tract of land located in Marion County, executed a promissory note in favor of Home Federal in the amount of $28,400. The note was secured by a mortgage and mortgagor's supplemental agreement, which provided that the Cooks were to obtain an insurance policy on the premises, naming Home Federal as loss payee. This mortgage was recorded on October 2, 1978.

On February 20, 1980, the Cooks executed a promissory note in favor of Personal Finance Company in the amount of $5,669.57. This note was also secured by a mortgage which required the Cooks to obtain an insurance policy on the premises, naming Personal Finance Company as loss payee. This mortgage was recorded on February 28, 1980.

The Cooks obtained an insurance policy covering the premises from Economy Fire and Casualty Company (Economy), but failed to make the policy payable to either mortgagee. On or about October 27, 1984, the improvements located on the premises were destroyed by fire. Economy denied coverage, however, asserting an arson defense.

On December 14, 1984, Home Federal wrote to Economy stating that it had been inadvertently left off as loss payee and asserting its position as first mortgagee. Economy responded, acknowledging Home Federal's interest as first mortgagee, but refused to pay because Home Federal was not named as loss payee.

Subsequent to Economy's refusal to pay the Cooks, they retained the defendant law firm of Crain, Cooksey & Veltman (Crain) to enforce their rights under the policy. On April 18, 1985, the Cooks and Crain entered into a retainer agreement which provided that, in exchange for rendering legal services, the Cooks "agree to pay said attorneys a contingent fee of 40% of any monies recovered on my behalf by either settlement or jury verdict." On August 6, 1985, Crain filed suit on behalf of the Cooks against Economy in the circuit court of Marion County.

On September 10, 1986, the Cooks and Economy reached a settlement agreement which provided in part that Economy would pay the Cooks $42,500. On September 11, 1986, Crain sent a letter to Economy claiming an attorney's lien on "any and all proceeds" recovered for the Cooks. On September 12, 1986, Home Federal filed a complaint for injunction seeking to enjoin the Cooks and Crain from distributing the proceeds of the settlement until further order of the court. The injunction was granted and remained in effect until the disposition of this case on February 6, 1987.

On September 18, 1986, Home Federal filed the present suit, naming the Cooks, Crain, Economy, and Personal Finance Company as defendants. All parties stipulated to the material facts and a bench trial was held on October 28, 1986. The trial court entered its opinion and judgment on February 1, 1987, ordering that $17,810.61 of the proceeds be paid first to Crain, the remaining $24,689.39 to be paid to Home Federal to be applied against the loan balance, with nothing remaining to be paid to Personal Finance Company or the Cooks.

■ On appeal, Home Federal argues that it had an equitable lien on the proceeds of the insurance policy based on the well-established principle of law that where a mortgaged premises is destroyed, the mortgagee is entitled to an equitable lien on the proceeds of any insurance policy. (*Grange Mill Co. v. Western Assurance Co.* (1886), 118 Ill. 396, 9 N.E. 274.) Crain does not contend otherwise, and we need

not lengthen this opinion with an analysis of this argument. Clearly, Home Federal has an equitable lien on the proceeds of the insurance policy.

■■ ■ Crain argues that it has a statutory attorney's lien on the proceeds pursuant to section 1 of "An Act creating attorney's lien *** " (Ill. Rev. Stat. 1985, ch. 13, par. 14). Section 1 provides that:

> "To enforce such lien, such attorneys shall serve notice in writing *** upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands, or causes of action." (Ill. Rev. Stat. 1985, ch. 13, par. 14.)

On September 11, 1986, Crain sent a letter to Economy claiming a statutory attorney's lien "upon any and all proceeds recovered." Home Federal contends that this letter was not sufficient to perfect an attorney's lien because it failed to comply with the requirements of the attorney lien statute. (Ill. Rev. Stat. 1985, ch. 13, par. 14.) Specifically, Home Federal argues that the letter failed to state adequately Crain's interest in the insurance proceeds. Cases cited by Home Federal in support of this proposition, however, relate to the method of service and not the content of the notice. While the court in *Cazalet v. Cazalet* (1944), 322 Ill. App. 105, 54 N.E. 2d 61, stated in *dicta* that the specific amount of the fee was a statutory requirement, we believe that the phrase "any and all proceeds" was a sufficient statement of interest to put Economy on notice and thereby effectuate the purpose of the statute. We conclude that Crain had a valid statutory attorney's lien. This determination makes it unnecessary for us to decide if Home Federal had standing to raise this question, not being the person against whom the lien was asserted, presumably the one the statute was designed to protect.

■■ We further believe that Crain had a valid equitable lien on the proceeds. In Illinois, an attorney acquires an equitable lien on a judgment if the agreement between attorney and client makes an equitable assignment of a portion of the recovery, as opposed to a mere promise to pay. To make this determination requires an examination of the exact language of the contract.

The retainer agreement provided: "We agree to pay said attorneys a contingent fee of 40% of any monies received ***." Both parties cite numerous cases in support of their respective positions. Home Federal relies most heavily on *Cameron v. Boeger* (1902), 200 Ill. 84, 65 N.E. 690, and *Department of Public Works v. Exchange National Bank* (1981), 93 Ill. App. 3d 390, 417 N.E.2d 1045, both of

which are distinguishable from the present case. In *Cameron*, the retainer agreement provided that "second parties hereto shall receive as their compensation for their services in and about the prosecution of said litigation on behalf of the first parties hereto, *from the first parties hereto*, one-third of whatever is realized or obtained." (Emphasis added.) (*Cameron*, 200 Ill. at 86, 65 N.E. 691.) This clearly indicates that payment was to come from the clients and not the *res* of the settlement or judgment. In *Department of Public Works*, the agreement between the attorney and clients provided that "[w]e hereby agree to pay to you *** *an amount equal to 28%*." (Emphasis added.) (*Department of Public Works*, 93 Ill. App. 3d at 391, 417 N.E.2d at 1046.) Again, this was construed by the court as a promise to pay and not an assignment.

In the present case, the retainer agreement provides that "[w]e agree to pay *** a contingent fee of 40%." This language is virtually identical to that in *In re Brass Kettle Restaurant, Inc.* (7th Cir. 1986), 790 F.2d 574. There the agreement stated that "the undersigned[ ] agree to pay the firm *** forty percent (40%) of any recovery." (*Brass Kettle*, 790 F. 2d at 575.) The court reasoned that under Illinois common law, this language created an equitable assignment. As the court in *Brass Kettle*, we conclude that the language in the present case creates an equitable assignment and constituted an equitable lien which attached to the proceeds when the retainer agreement was signed.

Having determined that both parties have a lien on the proceeds, the remaining question is which lien has priority. Inasmuch as both parties have equitable liens, we need not decide whether Crain's statutory attorney's lien would take precedence over Home Federal's equitable lien as we agree with the reasoning of the trial court.

■ Generally, the lien which is first in time has priority, but between two equitable liens, priority will be given to the first in time only where the equities of the various parties are in all other respects equal. Between equitable interests, priority in time is a preference rule of last resort and where one party has been negligent in enforcing his rights, the nonnegligent party will be given preference even if his lien arose after that of the negligent party. *Rohde v. Rohn* (1907), 232 Ill. 180, 83 N.E. 465.

■ In the present case, the trial court found it unnecessary to determine whether Home Federal's lien arose prior to Crain's, the court concluding, because of Home Federal's negligence, the equities were with Crain and justified subordinating its claim to that of Crain.

The trial court's decision was based primarily on the mortgagor's

supplemental agreement between Home Federal and the Cooks. In paragraph A(3), the mortgagor covenanted to

"keep the improvements *** upon said premises insured against damage by fire, and such other hazards as the Mortgagee may require to be insured against; and to provide *** such other insurance as the Mortgagee may require *** in such companies *** as shall be satisfactory to the Mortgagee; such insurance policies shall remain with the Mortgagee during the period or periods, and contain the usual clause satisfactory to the Mortgagee making them payable to the Mortgagee."

This provision of the agreement gave Home Federal a number of substantial rights, including the right to determine the risks to be covered; the company from which insurance was to be obtained; the form of the policy; and the right to be named loss payee. There is no indication from the record that Home Federal did anything to exercise these rights. Had Home Federal enforced its right to be named loss payee, the arson defense Economy initially asserted would not have applied and the litigation between the Cooks and Economy would not have arisen. We believe the trial court's conclusions that Home Federal had "slept on its rights" and that the equities favor Crain are correct. We hold that Home Federal's equitable lien was subordinate to the interest of Crain.

■ Home Federal also argues that the trial court failed to make a reasonable determination of attorney's fees and that the cause should be remanded for such a determination. The record indicates, however, that the parties stipulated that the amount due Crain was $17,810.61. This being the case, we fail to see any merit in Home Federal's contention that the trial court should have made a determination of the reasonableness of attorney's fees or any need to remand.

For the foregoing reasons, the judgment of the circuit court of Marion County is affirmed.

Affirmed.

HARRISON, P.J., and WELCH, J., concur.