RONALD ACHS, Plaintiff-Appellant and Cross-Appellee, v. CHARLES MADDOX, Defendant (Peter Thomas Smith *et al.*, Petitioners-Appellees and Cross-Appellants).

Second District   No. 2—88—0105

Opinion filed November 3, 1988.—Rehearing denied December 8, 1988.

Kemp & Capanna, of Oak Brook (Anthony J. Nasharr III, of counsel), for appellant.

Leonard M. Ring, of Leonard M. Ring & Associates, of Chicago (William J. Jovan, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Petitioners, attorneys Peter Thomas Smith and Leonard M. Ring and Associates, represented plaintiff Ronald Achs, pursuant to a written contingent fee agreement in the litigation of a personal injury suit against Charles Maddox. After entry of a judgment in Achs' favor for $12,142.72 following a jury trial, petitioners filed a motion in the circuit court requesting a finding of attorney liens in the amount of $4,047.57 for fees and $6,751.91 for costs incurred by petitioners. The circuit court found that petitioners held equitable attorney liens and entered judgment for petitioners in the amount of $4,014 for fees and $1,986 for costs in the proceeds of a check issued in satisfaction of

the judgment against Maddox. Achs appeals, and petitioners cross-appeal the trial court's finding of a lien for only a portion of the costs petitioners claim were incurred.

On September 11, 1984, plaintiff Ronald Achs and petitioner Peter Thomas Smith executed an agreement under which Achs employed Smith to act as his attorney in connection with Achs' claim for personal injuries and property damage arising from a motor vehicle accident in De Kalb County on September 5, 1984. The agreement contained the following provisions:

> "2. COMPENSATION: CLIENT agrees to pay a contingent fee for legal services rendered based upon a percentage of the amount recovered or settlement obtained payable as follows:
>
> > $33^{1}/_{3}\%$ percent of whatever may be recovered from said claim, either by suit, settlement or in any manner. The contingent fee shall be determined prior to deduction for costs advanced. ***
>
> 3. COSTS AND EXPENSES: CLIENT further agrees to reimburse ATTORNEY for any and all necessary costs and expenses incurred or paid out in behalf of CLIENT in connection with the legal services rendered. CLIENT shall reimburse ATTORNEY for said costs or expenses on a monthly basis unless otherwise agreed in writing.
>
> > \* \* \*
>
> 6. RETENTION OF RECOVERY: CLIENT agrees that ATTORNEY may receive any recovery pursuant to a settlement or a judgment and that he may retain therefrom any fee and reimbursement of expenses as provided above before disbursing the remainder to CLIENT. ***
> > ***
>
> 8. ATTORNEY LIEN: CLIENT agrees that ATTORNEY shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their [sic] hands by CLIENT for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between ATTORNEY and CLIENT."

On February 14, 1985, a complaint was filed against Charles Maddox in connection with the September 5 collision. On October 1, 1985, at the request of Achs, Smith entered into an agreement with petitioner Leonard M. Ring and Associates under which Leonard M. Ring and Associates accepted primary responsibility for litigating Achs' claim against Maddox. On August 27, 1986, judgment was entered on

the jury verdict in favor of Achs in the amount of $12,142.72.

On September 9, 1986, Leonard M. Ring and Associates received a check for the full amount of the judgment, payable to Ronald A. Achs and Leonard M. Ring and Associates. Achs never endorsed the check and on January 9, 1987, he filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in Bankruptcy Court for the Northern District of Illinois. The petition listed Leonard M. Ring and Associates as creditors having unsecured claims without priority in the amount of $10,349.48 for costs and fees in connection with the suit against Maddox.

Subsequent to the filing of the bankruptcy petition, petitioners forwarded a notice of attorney's lien to the attorney representing Achs in the bankruptcy proceeding. On June 11, 1987, the bankruptcy court approved the bankruptcy trustee's report that there were no assets in the estate to be administered for the benefit of creditors. On September 11, 1987, petitioners filed their petition in the circuit court of De Kalb County to adjudicate costs, liens, and fees, attaching to their petition an itemized list of expenses incurred in the litigation.

In connection with the petition, Achs and petitioners submitted affidavits giving somewhat conflicting accounts of the circumstances surrounding the execution of the attorney-client agreement. These affidavits disclose that Peter Thomas Smith was contacted by Ronald Achs' brother, Stephen Achs, on September 5, 1984, and met with him at the accident site the next morning; that Smith engaged an accident investigator to review the accident site; and that on September 11, 1984, shortly after Ronald Achs was released from hospitalization, Smith met with Achs at Achs' apartment at which time the attorney-client agreement was executed.

An affidavit by Smith stated that he reviewed the terms of the contingent fee agreement with Achs and that the agreement was executed after Smith was satisfied that Achs understood its terms. Ronald Achs' affidavit stated that at the time of the meeting with Smith, Achs was fatigued and uncomfortable due to prescribed medication and that he was not advised of the specific terms of the contingent fee agreement or provided with a copy of the agreement.

The following issues are raised on appeal and on the cross-appeal: (1) whether the attorney-client agreement supports the existence of an equitable lien in favor of petitioners for fees and costs; (2) whether the attorney-client agreement was enforceable; (3) whether petitioners had a valid statutory attorney lien; and (4) whether the trial court erred in failing to find an attorney lien for the full amount of costs claimed by petitioners.

Achs contends on appeal that petitioners had no valid equitable lien and that, therefore, his liability to petitioners for fees and costs was an unsecured obligation which was discharged in bankruptcy. He concedes that if equitable liens were created, they were unaffected by the bankruptcy proceedings.

■ The trial court found that petitioners had an equitable lien on the proceeds of the check received from Charles Maddox' insurer. In Illinois, in addition to a statutory attorney lien, an attorney may have an equitable lien where the agreement between attorney and client constitutes an equitable assignment of a portion of a fund obtained for the client. (*Cameron v. Boeger* (1902), 200 Ill. 84, 92, 65 N.E. 690; *Department of Public Works v. Exchange National Bank* (1981), 93 Ill. App. 3d 390, 394, 417 N.E.2d 1045.) According to *Lewis v. Braun* (1934), 356 Ill. 467, 191 N.E. 56, "[a]n equitable assignment is such an assignment as gives the assignee a title which, though not cognizable at law, equity will recognize and protect. [Citation.] There must be an implied appropriation of the fund, or of some designated part, proportion or percentage of it, to act as an equitable assignment." 356 Ill. at 477-78, 191 N.E. at 61.

■ Achs maintains that the language of the attorney-client agreement entered into with Smith did not work an equitable assignment. Achs correctly points out that there is a clear distinction between an assignment of a portion of a fund and a mere personal promise to pay attorney fees in an amount equal to a portion of a fund recovered or collected. (See *Department of Public Works*, 93 Ill. App. 3d at 394, 417 N.E.2d at 1048.) Whether an attorney-client agreement creates an equitable assignment turns on the precise language of the agreement. *McKee-Berger-Mansueto, Inc. v. Board of Education* (7th Cir. 1982), 691 F.2d 828.

In *Department of Public Works v. Exchange National Bank* (1981), 93 Ill. App. 3d 390, 417 N.E.2d 1045, cited by Achs, an agreement stating that attorneys in an eminent domain proceeding were to be paid "an amount equal to 28% of the increase obtained from the condemning body over the amount of $132,200.00" was held not to constitute an equitable assignment. In that case the agreement merely specified that the amount due as attorney fees would be determined by the amount recovered and did not purport to give the attorneys any rights against the actual fund recovered. 93 Ill. App. 3d at 394, 417 N.E.2d at 1048-49.

In contrast, in *Lewis v. Braun* (1934), 356 Ill. 467, 191 N.E. 56, an agreement stating that "[o]n the total amount recovered up to the sum or value of $65,000 the fee and payment for services shall be 20

percent thereof" was held to constitute an equitable assignment. (356 Ill. at 471, 191 N.E. at 58.) Because the agreement "imposes the compensation directly onto the *res*, so the implication of lien in justice to the attorney necessarily applies." (356 Ill. at 478, 191 N.E. at 61.) In *Home Federal Savings & Loan Association v. Cook* (1988), 170 Ill. App. 3d 720, 525 N.E.2d 151, an agreement granting attorneys "a contingent fee of 40%" of any monies recovered was held to create an equitable assignment. 170 Ill. App. 3d at 724, 525 N.E.2d at 153-54; see also *In re Brass Kettle Restaurant, Inc.* (7th Cir. 1986), 790 F.2d 574; *McKee-Berger-Mansueto, Inc. v. Board of Education* (7th Cir. 1982), 691 F.2d 828.

Achs cites *Anastos v. O'Brien* (1972), 3 Ill. App. 3d 1015, 279 N.E.2d 759, for the proposition that a contingent fee agreement is not an assignment to the attorney of any interest in the subject matter of the litigation. The issue before the court in *Anastos*, however, was whether a contingent fee agreement vested an attorney with such an interest in the litigation as to allow the attorney to compel the continuation of the litigation despite his client's desire to settle. *Anastos* does not hold that an attorney may not obtain rights in the proceeds of litigation under a contingent fee agreement. 3 Ill. App. 3d at 1020, 279 N.E.2d at 764.

Turning to the agreement between Achs and Smith, Achs contends that because the agreement states that the attorney fee is to be "based upon" the amount recovered, the agreement is merely a personal promise to pay an amount determined by the amount recovered. However, paragraph 2 of the attorney-client agreement states, in pertinent part, that the contingent fee is "payable as follows: 33⅓% percent of whatever may be recovered from said claim." This language indicates that petitioners were to look directly to the fund recovered for payment of their fees, and thus constitutes an equitable assignment. (See *Home Federal Savings & Loan Association*, 170 Ill. App. 3d at 724-25, 525 N.E.2d at 154.) Furthermore, paragraph 8 of the agreement, which purports to grant petitioners a lien for fees upon their client's claims, supports our conclusion that the agreement gave petitioners an interest in the recovery.

Achs has also argued that the agreement between Smith and Achs is unenforceable. Achs claims that an attorney-client relationship existed between Smith and Achs prior to the execution of the contingent fee agreement and, therefore, the agreement is presumptively unenforceable. Achs claims that petitioners did not rebut this presumption. While the record contains affidavits bearing upon the circumstances surrounding the execution of the agreement, we find

nothing in the record before us that suggests that the issue as now argued was ever raised in or ruled upon by the trial court. Questions not raised at trial are deemed waived and may not be raised for the first time on appeal. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872.

■ As we conclude that the trial court correctly found an equitable lien for petitioners' fees, we need not determine further whether petitioners established a valid statutory lien for fees.

We consider next whether any equitable lien extends to petitioners' costs. The agreement states, in part, in section 3 that "CLIENT further agrees to reimburse ATTORNEY for any and all necessary costs and expenses incurred ***. CLIENT shall reimburse ATTORNEY for said costs and expenses on a monthly basis unless otherwise agreed in writing." This provision clearly creates a personal obligation on the part of Achs to reimburse petitioners for expenses incurred as is required by Rule 5—103 of the Code of Professional Responsibility (Code) (107 Ill. 2d R. 5—103), which provides that a client must remain ultimately liable for expenses. The provision does not provide that expenses were to be reimbursed from the fund recovered. Moreover, such an interpretation would be inconsistent with the agreement that expenses were to be reimbursed on a monthly basis.

■ Petitioners contend, nevertheless, that Rule 5—103 of the Code gives an attorney a proprietary interest in his client's cause of action to the extent of expenses advanced. We find no support for this contention. Rule 5—103(a) provides:

"(a) A lawyer *may* acquire a proprietary interest in the cause of action or subject matter of litigation which he is conducting for a client *only* by

(1) acquiring a lien granted by law to secure his fee or expenses; or

(2) contracting with a client for a reasonable contingent fee in a civil case." (Emphasis added.) (107 Ill. 2d R. 5—103(a).)

This rule is a limitation on an attorney's ability to acquire a proprietary interest in his client's cause of action. (See *People ex rel. Brazen v. Finley* (1988), 119 Ill. 2d 485, 490, 519 N.E.2d 898.) Under subsection (a)(1), a lawyer may acquire a lien to secure his fee or expenses if granted by law. However, the statutory lien provision in "An Act creating attorney's lien and for enforcement of same" (Ill. Rev. Stat. 1987, ch. 13, par. 14) is expressly limited to a lien for fees and does not provide a lien for expenses. Subsection (a)(2) allows an attorney to acquire a proprietary interest in the litigation by contracting for a

reasonable contingent fee in a civil case, but does not similarly provide for expenses.

On the other hand, Rule 5—103(b) of the Code provides:

> "(b) While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses." (107 Ill. 2d R. 5—103(b).)

While Rule 5—103(b) requires that a client must remain ultimately liable for expenses advanced, it does not provide that the liability constitutes a lien on any recovery on behalf of the client. *Jordan v. Ray Schools-Chicago, Inc.* (1964), 49 Ill. App. 2d 1, 199 N.E.2d 827, cited by petitioners, lends no support to their contention that an attorney acquires a proprietary interest in the cause of action which creates a lien for expenses. The decision merely holds that the predecessor of Rule 5—103(b) supported a finding that a client was liable for expenses advanced in good faith by his attorney as a matter of convenience even where the agreement between attorney and client was silent as to who would bear expenses. 49 Ill. App. 2d at 6-7, 199 N.E.2d at 830.

Petitioners further note that paragraph 6 of the agreement authorized them to receive any judgment recovered on Achs' behalf and to retain reimbursement for expenses from it before distributing the remainder to Achs. While this provision creates a procedure by which petitioners may collect any recovery and retain any fee and expenses advanced, it does not establish a proprietary interest for expenses in the recovery, nor would such an interest be allowed under Rule 5—103(a)(2) of the Code. We, therefore, find no equitable assignment for expenses arising from this provision of the agreement.

We, therefore, affirm that part of the order of the circuit court finding an equitable attorney lien for $4,014 in fees and awarding that amount to petitioners. We reverse the circuit court's finding of a lien for costs in the amount of $1,986.

Affirmed in part; reversed in part.

NASH and WOODWARD, JJ., concur.